# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KARON DESHUN THOMAS,

        Defendant-Appellant.

UNPUBLISHED
September 6, 2016

No. 323358
Saginaw Circuit Court
LC No. 13-309039-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ISAIAH DEEQUAN CLARK,

        Defendant-Appellant.

No. 323369
Saginaw Circuit Court
LC No. 13-038798-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

EVELLIS TRENTONTREVON MCGEE,

        Defendant-Appellant.

No. 323456
Saginaw Circuit Court
LC No. 13-039035-FC

---

Before: MARKEY, P.J., and OWENS and BOONSTRA, JJ.

PER CURIAM.

      In these consolidated appeals, defendants Karon Thomas and Evellis McGee appeal as of right their jury trial convictions of second-degree murder, MCL 750.317, carrying a firearm or other dangerous weapon with unlawful intent, MCL 750.226, assault with the intent to commit

-1-

murder, MCL 750.83, and three counts of possession of a firearm when committing or attempting to commit a felony (felony firearm), MCL 750.227b. The jury acquitted both men of conspiracy to commit first-degree murder. Thomas was sentenced to concurrent prison terms of life with the possibility of parole for second-degree murder, life with the possibility of parole for assault with intent to murder, and three to five years for carrying a firearm or other dangerous weapon with unlawful intent. McGee was sentenced to concurrent prison terms of 36 to 60 years for second-degree murder, 36 to 60 years for assault with intent to murder, and three to five years for carrying a firearm or other dangerous weapon with unlawful intent. In addition, Thomas and McGee were sentenced to concurrent prison terms of 24 months for each felony-firearm conviction, these sentences to run consecutive to the terms imposed for their other convictions.

Defendant Isaiah Clark appeals as of right his jury trial convictions of one count each of second-degree murder, carrying a firearm or other dangerous weapon with unlawful intent, and possession of a firearm by a convicted felon, MCL 750.224f, three counts of assault with intent to murder, and six counts of felony firearm. Clark was sentenced as a third habitual offender, MCL 769.11, to concurrent prison terms of 60 to 90 years for second-degree murder, 60 to 90 years for each assault with intent to murder conviction, six to 10 years for carrying a firearm or other dangerous weapon with unlawful intent, and six to 10 years for possession of a firearm by a convicted felon. He also was sentenced to concurrent prison terms of 24 months for each felony-firearm conviction, these sentences to run consecutive to the terms imposed for his other convictions.

## I. FACTS

These cases arise out of a May 23, 2013 shooting that occurred shortly before 6:00 p.m. in the parking lot of Saginaw's Florence Event Hall, where Saginaw High School students had gathered with friends and family for an informal pre-prom party. The prosecution theorized that animosity between those associated with Sheridan Park neighborhood and those associated with Saginaw's east side precipitated the shooting. Evidence indicated that defendants Thomas and McGee were from the east side, while defendant Clark, Keon Bowens, a fourth defendant who was acquitted of all charges, and Anterio Patton, the presumed target of the shooting, were from Sheridan Park.

Pamela Jordan reported that, shortly before the shooting began, Thomas, McGee, and several other young men approached Patton, Clark, Bowens, and others gathered around the black Caprice that Patton had driven to the pre-prom party. The witness recounted that Thomas's group approached Patton's group as if "they were wanting trouble." After she had taken a picture of Patton and his date and was walking away, she heard someone from Thomas's group said to someone in Patton's group, "I heard you was looking for me. I got nine rounds for you." Malik Jordan testified that the men by the Caprice were flashing weapons and gang signs, while Trenika Shivers, Patton's aunt, said she saw McGee standing beside Thomas, and saw Thomas flash his gun. Shivers opined that Thomas's was not an aggressive move, nor was it much noticed by Patton's group. According to Malik, Thomas pulled his gun, held it by his side, and started to back up. Shaquana Reid indicated that McGee was at Thomas's side, acting as if he were about to draw his gun.

-2-

Several witnesses testified to a sense that something was going to happen. Tangela Owens said she was walking around taking pictures when her daughter, Tonquinisha "Ne-Ne" McKinley, approached her and told her they had to leave because something was "getting ready to go down." Pamela Jordan said that, just after she heard the threatening words spoken toward Patton's group, her son, Malik, approached her and said, "mom, it's about to be some stuff," and began pushing her along, away from the area where the black Caprice was parked. Trenika Shivers said she sensed there was about to be a fight and started to get in the Caprice to drive it out of the way when defendant Clark pushed her all the way in the car and said, "ma, get out the way." According to Malik Jordan, after Thomas pulled his weapon, held it by his side, and started backing up, defendant Clark emerged from the Caprice and started shooting. Marguerie Johnson recalled that she was standing by defendants Thomas and McGee when the shooting started, and she saw them shooting back in the direction of Patton and defendant Clark. Several witnesses said that it sounded like shots were coming from everywhere. A firearms expert from the Michigan State Police testified that police recovered 36 cartridge casings fired from five semiautomatic weapons. Ne-Ne McKinley was fatally shot in the face, while three other innocent bystanders were wounded.

## II. ANALYSIS

### A. COMMON ISSUES

### 1. SEPARATE TRIALS

All three defendants argue that the trial court abused its discretion by denying their motions for separate trials. They contend that separate trials were mandated because their defenses were antagonistic and mutually irreconcilable such that if the jury was to believe Thomas and McGee, who said that they fired in self-defense, it necessarily had to disbelieve Clark, who denied having a weapon. We disagree.

We review the trial court's ruling on a motion for separate trials for an abuse of discretion. *People v Williams*, 483 Mich 226, 234 n 6; 769 NW2d 605 (2009), citing *People v Girard*, 269 Mich App 15, 17; 709 NW2d 229 (2005). "A trial court abuses its discretion when it chooses an outcome that is outside the range of principled outcomes." *People v Bosca*, 310 Mich App 1, 43; 871 NW2d 307 (2015).

"There is a strong policy favoring joint trials in the interest of justice, judicial economy, and administration, and a defendant does not have an absolute right to a separate trial. *People v Etheridge*, 196 Mich App 43, 52; 492 NW2d 490 (1992). Whether to hold separate trials is within the discretion of the trial court, and "the burden is on the accused to make an affirmative showing that a substantial right will be prejudiced in a joint trial." *Id*. at 53. The right of severance is governed by MCR 6.121, which provides in relevant part,

> **(C) Right of Severance; Related Offenses.** On a defendant's motion, the court must sever the trial of defendants on related offenses on a showing that severance is necessary to avoid prejudice to substantial rights of the defendant.

> **(D) Discretionary Severance.** On the motion of any party, the court may sever the trial of defendants on the ground that severance is appropriate to

-3-

promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants. Relevant factors include the timeliness of the motion, the drain on the parties' resources, the potential for confusion or prejudice stemming from either the number of defendants or the complexity or nature of the evidence, the convenience of witnesses, and the parties' readiness for trial.

MCR 6.121(C) mandates severance "only when a defendant provides the court with a supporting affidavit, or makes an offer of proof, that clearly, affirmatively, and fully demonstrates that his substantial rights will be prejudiced and that severance is the necessary means of rectifying the potential prejudice." *People v Hana*, 447 Mich 325, 346; 524 NW2d 682 (1994). If a defendant fails to make this showing in the trial court, reversal of a trial court's decision to join defendants for trial is precluded "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial." *Id.* at 346-347.

The *Hana* Court held that inconsistent defenses and "incidental spillover prejudice" do not mandate severance. *Hana*, 447 Mich at 349. Rather, "the defenses must be mutually exclusive or irreconcilable," meaning that the "tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." *Id.* (internal quotation marks and citations omitted). In other words,

> "It is natural that defendants accused of the same crime and tried together will attempt to escape conviction by pointing the finger at each other. Whenever this occurs the co-defendants are, to some extent, forced to defend against their co-defendant as well as the government. This situation results in the sort of compelling prejudice requiring reversal, however, only when the competing defenses are so antagonistic at their cores that both cannot be believed. Consequently, we hold that a defendant seeking severance based on antagonistic defenses must demonstrate that his or her defense is so antagonistic to the co-defendants that the defenses are mutually exclusive. Moreover, defenses are mutually exclusive within the meaning of this rule if the jury, in order to believe the core of the evidence offered on behalf of one defendant, must disbelieve the core of the evidence offered on behalf of the co-defendant." [*Id.* at 349-350, quoting *State v Kinkade*, 140 Ariz 91, 93; 680 P 2d 801 (1984).]

In this case, the trial court determined that separate trials were not mandated because the defenses of the instant defendants were not mutually exclusive as defined by *Hana*. We agree. Notwithstanding defendants' assertions to the contrary, the jury did not have to disbelieve one defendant in order to believe another. *Id*. Michigan State Police scene reconstruction and firearms reports confirmed that there were at least five shooters, and witnesses testified that shots were coming from everywhere. Photographs taken by attendees at the pre-prom party show a number of people around the black Caprice, the area from whence Malik Jordan said the initial shots came. Under these circumstances, Clark's assertion that he did not have a weapon would not necessarily undermine McGee and Thomas's assertions that they fired their guns in self-defense. The jury could reasonably believe that Clark did not have a weapon and that McGee fired toward someone near the black Caprice other than Clark or Bowens in self-defense. Therefore, because defendants failed to demonstrate that their defenses were mutually exclusive under *Hana*, the trial court did not abuse its discretion by denying defendants' motions for

severance pursuant to MCR 6.121(C). In addition, because defendants did not meet the standard for separate trials, they also did not meet the standard for separate juries. *Hana*, 447 Mich at 351 (stating that "[t]he use of separate juries is a partial form of severance to be evaluated under the standard, set forth above, applicable to motions for separate trials").

Further, the gravamen of defendants' argument for severance under subsection (D), which permits severance "to promote fairness to the parties and a fair determination of the guilt or innocence of one or more of the defendants," was that consolidation would be inherently prejudicial because the defenses of the codefendants were antagonistic and mutually exclusive. However, because subsection (C) did not mandate separate trials, the prosecution intended to call the same witnesses against each defendant, and the record indicates that some witnesses were reluctant to testify at one trial, let alone four, the interests of justice and judicial economy weighed in favor of a single trial.

Defendants having failed to show that separate trials were necessary, reversal is precluded "absent any significant indication on appeal that the requisite prejudice in fact occurred at trial." *Hana*, 447 Mich at 347. Defendants identify no such prejudice. In fact, the record shows that the trial was devoid of the reciprocal finger pointing predicted by defendants in their motions for separate trials. McGee testified that he recognized the person shooting at him from the direction of the black Caprice, but asserted that it was not Clark, while Trenika Shivers testified that Clark did not have a gun and that he ran away when the shooting began. Thus, defendants having shown no prejudice arising from their joint trial, reversal is precluded. *Id*.

## 2. EVIDENTIARY ISSUES

### A. STANDARDS OF REVIEW

This Court reviews preserved challenges to a trial court's evidentiary rulings for an abuse of discretion. *People v Gursky*, 486 Mich 596, 606; 786 NW2d 579 (2010). A trial court abuses its discretion when it fails to select an outcome within a range of reasonable and principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013). We review preliminary questions of law surrounding admission of evidence de novo. *Id*. at 723. However, we review unpreserved challenges to a trial court's evidentiary rulings for plain error affecting defendants' substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). An error affects substantial rights if it affected the outcome of the proceedings and it either resulted in the conviction of an innocent person or seriously affected the fairness, integrity or public reputation of the proceedings. *People v Jones*, 468 Mich 345, 355; 662 NW2d 376 (2003).

### B. FACEBOOK POSTING

Defendant Thomas contends that the trial court abused its discretion when it admitted a Facebook posting into evidence without sufficient foundation. At issue is a page purportedly from defendant's Facebook page on which is a picture of McKinley, the initials "RIP," and a post reading, "Shuldd I let em kill me or turn myself ndd. I'm facing life nd da gtt dam pin…rest

in peace Ne-Ne, catch me nd traffic." Thomas contends that without knowing who made the posting, the comment is irrelevant hearsay. We disagree.

The improper admission of evidence may deprive a defendant of due process if it "infused the trial with unfairness." *Estelle v McGuire*, 502 US 62, 75; 112 S Ct 475; 116 L Ed 2d 385 (1991), quotation marks and citation omitted). The trial court may only admit relevant evidence, MRE 402, and the "requirement of authentication or identification is a condition precedent to admissibility," MRE 901(a). The authentication requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." MRE 901(a). One way of authenticating evidence is by the testimony of a witness with knowledge of the evidence, MRE 901(b)(1). " 'It is axiomatic that proposed evidence…need [not] be free of weakness or doubt. It need only meet the minimum requirements for admissibility.' " *People v McDade*, 301 Mich App 343, 353; 836 NW2d 266 (2013), quoting *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991).

In the instant case, Raven Howard had personal experience with Thomas's Facebook page, and testified that the evidence at issue undoubtedly was what the prosecution said it was, i.e., a screen shot from defendant Thomas's Facebook page. MRE 901(b)(1). Although Howard speculated that Thomas's Facebook account could have been hacked and the comment posted by someone posing as Thomas, her speculation was unsupported by even the least hint of evidence. Thus, given Howard's firm identification of the exhibit as a screen shot from Thomas's page based on her personal knowledge of and experience with the page, and the absence of any evidence suggesting that Thomas's page had in fact been hacked, MRE 901(b)(1) was satisfied, and the minimum requirements for admissibility were met. *McDade*, 301 Mich App at 353. In addition, the posting was relevant because it referred to the shooting shortly after it happened, MRE 402, and it was not hearsay because it was a party admission, MRE 801(d)(2). Therefore, the trial court did not abuse its discretion by admitting the page and comment into evidence.

## C. GANG-RELATED PHOTOGRAPHIC EVIDENCE

Defendants Thomas and McGee contend that the trial court abused its discretion when it overruled objections to the introduction into evidence of numerous photographs of various persons displaying alleged gang signs because the prejudicial effect of the evidence far outweighed its probative value. Defendant Clark contends that Detective Matthew Gerow's testimony regarding gang signs was highly prejudicial because the prosecution's evidence did not show the type of gang activity that would justify introducing evidence from a purported expert on gang culture. We disagree.

Evidence is admissible it if it has any tendency to make the existence of a fact that is of consequence to the action more probable or less probable than it would be without the evidence. MRE 401; MRE 402. Proof of motive in a prosecution for murder is always relevant, even if not essential. *People v Rice*, 235 Mich App 429, 440; 597 NW2d 843 (1999). However, even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. MRE 403. Unfair prejudice may exist when there is a tendency that minimally probative evidence will be given undue or preemptive weight by the jury, or when it would be inequitable to allow use of the evidence. *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

The prosecutor explained that the evidence at issue went to motive only, and our review of the record confirms that the prosecutor used the photographs to put forward a theory of motive, not to attempt to establish bad character or guilt by association. In addition, because the evidence indicated a connection between gang affiliation and the charged crimes, it paved the way for proper admission of the testimony of Detective Gerow. *People v Bynum*, 496 Mich 610, 626-627; 852 NW2d 570 (2014) (stating that, where there is fact evidence that a crime is gang-related, expert testimony is admissible for an appropriate purpose, such as to elucidate motive). Further, the record shows that, although Detective Gerow testified to the significance of the hand gestures displayed in the photographs, he did not testify that defendants' alleged participation in the pre-prom shooting was behavior "in conformity with characteristic traits commonly associated with gang members." *Bynum*, 496 Mich at 627. Based on the foregoing, we conclude that the trial court did not abuse its discretion by admitting the photographs at issue because they were relevant to show motive, and the prosecutor and the trial court restricted their use to showing motive. We also conclude that defendant Clark's challenge fails because the prosecution introduced sufficient evidence that the charged crimes were gang-related to allow Detective Gerow to testify about gang signs.

Defendant Thomas contends that admission of one particular photograph was an abuse of discretion because the photograph constituted evidence of prior bad acts related to the death of "Mav," a young man from Sheridan Park who was killed in 2007, shot while riding a Moped. Thomas sets forth considerable argument under MRE 404(b), which cautions against offering evidence of prior bad acts to prove that a defendant acted in conformity with those acts, and asserts that the particular photograph was not relevant, that it was not offered for a proper purpose, and that its probative value was vastly outweighed by its prejudicial effect.

Thomas's attempt to characterize the photograph, in which Clark is wearing a sweatshirt that reads "RIP MAV," as 404(b) evidence is incorrect. The same sentiment with regard to Mav was referenced on a button worn by Bowens at the pre-prom event, and the purpose of the photograph was to show a connection between Bowens and Clark. Thus, contrary to Thomas's assumption, the photograph was not offered under the rubric of MRE 404(b). The prosecutor did not suggest that defendant Thomas or any of the defendants committed acts associated with the death of Mav. On the contrary, immediately after testimony about the photograph, the trial court explained to the jury that none of the defendants had been charged with any of the events surrounding Mav's death, and that the photograph was being offered only to show associations. Whatever the events surrounding Mav's death, they were not crimes, wrongs, or acts of defendant Thomas, or any of the other defendants, for the purposes of MRE 404(b), and the prosecution did not attempt to introduce the exhibit at issue as evidence of the defendants' character. Therefore, Thomas's specific challenge to this photograph fails.

Defendant McGee next contends that the trial court abused its discretion when it overruled objections to the testimony of witnesses about what they saw in the photographs, arguing that such testimony encroached upon the jury's fact-finding role. Again, we disagree.

Lay witnesses may testify in the form of opinions or inferences as long as they are rationally based on the perception of the witness and helpful to the determination of a fact in issue. MRE 701. Here, the prosecuting attorney presented witnesses with photographs of groups of people that included defendants and asked whether those depicted were making gestures with

their hands and, if so, whether they knew what the gestures meant. The witnesses' opinions did not go to whether those depicted were members of rival gangs, or to whether gang rivalry was at the root of the shooting, but only to what they saw in front of them and any personal knowledge they may have had with respect to what they saw. Most significantly, the trial court properly instructed the jury on its responsibility to determine the facts of the case, to weigh and decide what each piece of evidence meant and to assess the credibility of all the witnesses, including witnesses from law enforcement. The jurors are presumed to have followed the court's instructions and, accordingly, to have exercised their proper role as fact-finders, making their own determinations about the significance of the photographs, and accepting or rejecting the witnesses' testimony as they saw fit. *People v Graves*, 458 Mich 476, 486; 581 NW2d 229, 234 (1998), citing *Hana*, 447 Mich at 351. For these reasons, we find that the trial court did not abuse its discretion by allowing witnesses to testify to what they saw in the prosecution's photographic evidence.

## 3. SUFFICIENCY OF THE EVIDENCE

### A. STANDARDS OF REVIEW

This Court reviews claims of insufficient evidence de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). We examine the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Ericksen*, 288 Mich App at 196. We resolve all evidentiary conflicts in favor of the prosecution, and we "will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger (On Remand)*, 278 Mich App 210, 222; 749 NW2d 272 (2008). "Circumstantial evidence and the reasonable inferences it permits are sufficient to support a conviction, provided the prosecution meets its constitutionally based burden of proof beyond a reasonable doubt." *Ericksen*, 288 Mich App at 196. Further, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

### B. SECOND-DEGREE MURDER

Defendants Thomas and McGee first contend that the evidence against them was insufficient to support the jury's verdicts of guilty for second-degree murder. We disagree. The elements of second-degree murder are: "(1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse." *People v Goecke*, 457 Mich 442, 463-464; 579 NW2d 868 (1998). "Malice is defined as the intent to kill, the intent to cause great bodily harm, or the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *Id*. at 464.

The gravamen of defendants' argument is that they acted in self-defense. Specifically, each defendant asserts that he responded to a "sudden, fierce, and violent attack" by returning fire.

"[T]he killing of another person in self-defense by one who is free from fault is justifiable homicide if, under all the circumstances, he honestly and reasonably believes that he is in imminent danger of death or great bodily harm and that it is necessary for him to exercise deadly force." *People v Riddle*, 467 Mich 116, 119; 649 NW2d 30 (2002). "[A] person is *never* required to retreat from a sudden, fierce, and violent attack; nor is he required to retreat from an attacker who he reasonably believes is about to use a deadly weapon." *Id*.

However, "where a defendant 'invites trouble'…his failure to pursue an available, safe avenue of escape might properly be brought to the attention of the factfinder as a factor in determining whether the defendant acted in reasonable self-defense." *Riddle*, 467 Mich at 127. Further, in *People v Heflin*, 434 Mich 482; 456 NW2d 10 (1990), Chief Justice Riley explained that " 'an act committed in self-defense but with excessive force or in which defendant was the initial aggressor does not meet the elements of lawful self-defense.' " *People v Heflin*, 434 Mich 482, 509; 456 NW2d 10 (1990) (opinion by RILEY, C.J.). With respect to what constitutes an "aggressor," this Court has quoted with approval the following proposition from *Wharton's Criminal Law and Procedure* (Anderson ed), § 229, p 501: "It is generally held that the aggressor is the one who first does acts of such nature as would ordinarily lead to a deadly combat or as would put the other person involved in fear of death or serious bodily injury." *People v Van Horn*, 64 Mich App 112, 115; 235 NW2d 80 (1975).

Viewing the facts in the light most favorable to the prosecution, *Ericksen*, 288 Mich at 196, leaves no reasonable doubt that Thomas and McGee were aggressors as described in *Van Horn*. Thomas, McGee and their associates approached Patton, Clark, Bowens and their associates, both sides indicated that they were armed, and threatening words were spoken. McGee appeared poised to draw his weapon, and Thomas did draw his, placing it by his side and beginning to back up, an action the jury might reasonably have interpreted as retreat, but just as reasonably have interpreted as moving into a position to shoot and run. Thomas and McGee's contention that they responded in self-defense ignores their role as aggressors, as ones "inviting trouble." Consequently, even if they did act in self-defense, because a jury could reasonably have found them to be the initial aggressors, their returning fire after being fired upon "does not meet the elements of lawful self-defense." *Heflen*, 434 Mich at 509.

Next, defendants Thomas and McGee contend that they did not "cause" McKinley's death because theirs was not the bullet that killed her. However, defendants were prosecuted under an aiding and abetting theory, conviction under which required the prosecution to prove that,

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and citations omitted).]

It is undisputed that a bullet from someone's gun killed McKinley, thus satisfying the first element of the aiding and abetting theory. The actions of Thomas and McGee described above assisted the commission of the crime by creating or contributing to the tensions that

erupted in gunfire, thus satisfying the second element. From these same actions, a jury could reasonably infer that defendants Thomas and McGee acted "in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm[,]" *Goecke*, 457 Mich at 464, thus satisfying the third element of aiding and abetting. Accordingly, viewed in a light most favorable to the prosecution, *Ericksen*, 288 Mich at 196, the evidence was sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that defendants Thomas and McGee committed second-degree murder under an aiding and abetting theory.

## C. ASSAULT WITH INTENT TO MURDER

Defendants Thomas and McGee next challenge the sufficiency of the evidence supporting their convictions for assault with intent to murder Anterio Patton, advancing the same self-defense argument to contend that the evidence is not sufficient to prove beyond a reasonable doubt that they possessed the required specific intent to kill. However, defendants' self-defense argument fails for the reasons set forth above.

The elements of assault with intent to murder are: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *Id*. at 195-196 (quotation marks and citation omitted). "The intent to kill may be proved by inference from any facts in evidence." *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95 (1999). Circumstantial evidence from which intent to kill may be inferred include the following:

[T]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made. [*People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985), quoting *Roberts v People*, 19 Mich 401, 416; 1 Mich NP Supp VIII (1870).]

Assault with intent to murder is a specific intent crime that requires proof beyond a reasonable doubt that defendant possessed specific intent or that he aided and abetted the perpetration of the crime knowing that his co-participant had the necessary specific intent. *People v Triplett*, 105 Mich App 188, 306 NW2d 442 (1981). For purposes of this offense, intent to kill may not be proven by intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. *People v Brown*, 267 Mich App 141, 150; 703 NW2d 230 (2005), quoting *Warren v Smith*, 161 F3d 358, 361 (CA 6, 1998).

Viewing the evidence in the light most favorable to the prosecution, *Ericksen*, 288 Mich App at 196, and resolving all conflicts in favor of the prosecution, *Unger*, 278 Mich App at 222, the evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that Thomas and McGee assaulted Patton with the intent to murder. It is undisputed that Thomas and McGee assaulted Patton by firing their weapons at him. Witnesses testified that defendants Thomas and McGee fired their weapons in the direction of Patton. Marguerie Johnson said that Patton appeared to be the target because "he was the only one over in that direction and had the

music and all that stuff playing." Pamela Jordan testified that, although she did not see who spoke them, the threatening words were spoken "towards" Patton. In addition, the prosecution contends that the number of cartridge cases found at the scene further supports the assault with intent to murder convictions because a jury could reasonably infer that Thomas, McGee, and the other defendants intended to kill when they repeatedly pulled the triggers on their guns. Further, had the assault of Thomas and McGee on Patton been successful, there can be no doubt that the result would have been murder. This evidence, the evidence presented of rival gang affiliations, and the reasonable inferences that may be drawn from all of the evidence, *Ericksen*, 288 Mich App at 196, are sufficient to support the jury's conviction of Thomas and McGee for assault with intent to kill.

## D. REMAINING CHARGES

Defendant McGee challenges the sufficiency of the evidence supporting his conviction for carrying a firearm or other dangerous weapon with unlawful intent. He admits that he carried a weapon to the pre-prom party, but asserts that it was for protection because he lived in a rough neighborhood.

To obtain a conviction for carrying a firearm or other dangerous weapon with unlawful intent, the prosecution must prove beyond a reasonable doubt that the defendant was armed with a firearm or dangerous weapon and intended to use the weapon unlawfully against someone else. MCL 750.226. "Conviction under this statute must rest on proof of the intent with which the weapons were carried, not mere possibilities." *People v Flinnon*, 78 Mich App 380, 385; 260 NW2d 16 (1977). The evidence must establish that McGee "departed from a location while equipped with a qualifying weapon" and, "at the time of departing, had the intent to use the weapon unlawfully against another person." *People v Mitchell*, 301 Mich App 282, 293; 835 NW2d 615 (2013).

Viewed in the light most favorable to the prosecution, *Ericksen*, 288 Mich App at 196, the evidence is sufficient to allow a rational trier of fact to conclude beyond a reasonable doubt that McGee carried a firearm from one location to another, having at the time the intent of using it unlawfully against Clark or his associates. *Mitchell*, 301 Mich App at 293. Even if McGee elected to take a gun to the pre-prom party as protection, once at the pre-prom event he left one location in the parking lot, with the gun, to go to another location in the parking lot and confront Patton and his armed group. McGee stood by Thomas while Thomas flashed his gun and pulled his weapon, McGee or someone else in his group uttered a challenge that concluded with "I got nine rounds for you," and McGee appeared poised to pull his own weapon. He eventually did draw and fire his weapon toward Patton and Clark. That McGee appeared to fire back instead of fire first does not weigh against a finding that, when he approached the Patton/Clark group, he did so with the fully formed intent of using his weapon unlawfully against them.

## 4. INSTRUCTIONAL ERROR

Defendant Thomas contends that the trial court abused its discretion and violated his right to a fair trial by instructing the jury on mutual combat, and further contends that his right to a fair trial was violated by the fact that the instruction was "interspersed with the self-defense instruction." Similarly, defendant McGee argues that the trial court erred in providing a

nonstandard instruction derived from *Riddle* but stressing mutual combat instead of the "sudden, violent, and fierce attack" which both claim the evidence more accurately reflects. We review claims of instructional error de novo, examining the instructions as a whole to determine whether any error occurred. *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). We review a trial court's determination whether a jury instruction is applicable to the facts of the case for an abuse of discretion. *People v Dobek*, 274 Mich App 58, 82; 732 NW2d 546 (2007).

A mutual combatant is one who is a willing participant in a physical altercation, what at common law was called a "sudden affray" or "chance medley." *Riddle*, 467 Mich at 120. Mutual combat is not a mere fistfight, but "usually arises when the parties are armed with deadly weapons and mutually agree or intend to fight with them." 40 CJS Homicide § 206. p 658. The mutual intent and willingness to fight may be manifested by the acts and conduct of the parties leading up to the altercation, and it is immaterial who fires first. *Id*.

We first find that the trial court did not abuse its discretion by granting the prosecutor's request for a mutual combat instruction. As already described, witnesses testified that defendants Thomas and McGee and several companions intentionally confronted Patton, defendant Clark and their associates; one witness testified that they approached "as if they wanted trouble." Both sides were flashing guns and posturing, someone in Thomas's group spoke threatening words to someone in Patton's group, and several people discerned that something bad was about to happen and began to leave the area. A jury could reasonably infer from this testimony that defendants were signaling their mutual intent and willingness to engage in a physical altercation. Therefore, the trial court was required to give the mutual combat instruction requested by the prosecution. *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995) ("A trial court is required to give a requested instruction, except where the theory is not supported by the evidence.").

Next, regarding defendant Thomas's contention that the format of the instruction "dilut[ed] the instructions on self-defense," and defendant McGee's contention that the instruction was prejudicially skewed toward mutual combat, our review of the instruction as a whole reveals no error. *Kowalski*, 489 Mich at 501. In addition to instructing the jury that mutual combatants were not entitled to assert self-defense for acts committed during mutual combat, the trial court properly instructed the jury on self-defense, as well as on the fact that a person suddenly, fiercely, and violently attacked does not have a duty to retreat. The trial court also instructed the jury that it was the prosecutor's burden to prove that defendants had not acted in self-defense. Given the foregoing, we find no error or abuse of discretion with respect to the trial court's instructions on mutual combat.

Defendant McGee also contends that the trial court abused its discretion by granting the prosecution's request for an instruction on aiding and abetting. However, our finding that the evidence is sufficient to support defendant's conviction for second-degree murder under an aiding and abetting theory necessarily implies that the instruction was proper. Therefore, defendant's claim that the evidence did not support an instruction on aiding and abetting fails.

B. SEPARATE ISSUES

1. DOCKET NO. 323456 (MCGEE)

Defendant McGee contends that the trial court's denial of his motion for a new trial on the ground that the jury's verdict was against the great weight of the evidence was an abuse of discretion.[1] We disagree.

We review a trial court's decision to grant or deny a motion for a new trial for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). An abuse of discretion occurs when the result is outside the range of principled outcomes. *People v Blackston*, 481 Mich at 460. The trial court's factual findings are reviewed for clear error, while questions of law are reviewed de novo. *People v Terrell*, 289 Mich App 553, 559; 797 NW2d 684 (2010), lv den 489 Mich 858 (2011).

"The test to determine whether a verdict is against the great weight of evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Musser*, 259 Mich App 215, 218-219; 673 NW2d 800 (2003), lv den 470 Mich 865 (2004). The trial court must review the whole body of proofs, but it may not sit as the "the thirteenth juror" to grant a new trial based on the court's disagreement with the jury's credibility determinations. *People v Lemmon*, 456 Mich 625, 639-640; 576 NW2d 129 (1998). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647. "[U]nless it can be said that directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645-656 (internal quotation marks and citation omitted).

McGee argues that the trial court's review of his motion under the standard for reviewing the sufficiency of the evidence rather than that for reviewing the great weight of the evidence is an error of law that necessarily constitutes an abuse of discretion. However, given McGee's argument that the verdict was against the great weight of the evidence *because* it was not supported by sufficient evidence, we are not persuaded that the trial court's application of a sufficiency of the evidence analysis was inappropriate. See *People v Marji*, 180 Mich App 525, 542; 447 NW2d 835 (1989) (We applied a sufficiency of the evidence analysis to the defendant's

---

[1] After filing his original appellate brief, McGee obtained new appellate counsel, who filed a motion for remand with this Court, which we granted. *People v McGee*, unpublished order of the Court of Appeals, issued November 12, 2015 (Docket No. 323456). In addition to moving on remand for a new trial, McGee raised the same sentencing issues and challenge to the court's order of restitution that he raised in his original appellate brief. Although the trial court denied his motion for a new trial, it decided the remaining issues in his favor, thus rendering them moot for purposes of this appeal.

contention that his conviction was against the great weight of the evidence because it relied upon inconsistent and unreliable testimony, and then affirmed the trial court's denial of the defendant's motion for a new trial after). *Id*.

In addition, the basis of McGee's motion for a new trial was his inference that the jury did not properly weigh the testimony of the witnesses at trial. However, a trial court may not act as a "thirteenth juror." *Lemmon*, 456 Mich at 640. It may not grant a new trial simply because it disagrees with the jury's credibility determinations. *Id*. Defendant does not assert that "directly contradictory testimony was so far impeached that it was deprived of all probative value or that the jury could not believe it, or contradicted indisputable physical facts or defied physical realities[.]" Id. at 645-646 (internal quotation marks and citation omitted). Therefore, with regard to witness credibility, "the trial court must defer to the jury's determination." *Id*. at 646.

For the reasons set forth in prior sections of this opinion, we agree with the trial court that the evidence was sufficient to support defendant McGee's convictions for second-degree murder and carrying a firearm or dangerous weapon with unlawful intent. McGee did not argue that the testimony against him lacked probative value, or that it "contradicted indisputable physical facts or defied physical realities." *Lemmon*, at 645-656. Rather, he simply implied that the testimony that favored him was more credible and should have been given greater weight than the testimony against him. However, even if the trial court had disagreed with the jury's assessment of the witnesses' credibility, mere disagreement is not a proper ground for granting a new trial. See *Lemmon*, 456 Mich at 645-646. Therefore, the trial court did not err by denying McGee's motion for a new trial.

Defendant McGee also identifies two comments made by the trial court that he contends were unfairly prejudicial. Because this issue was not preserved, our review is for plain error affecting defendant McGee's substantial rights. *Carines*, 460 Mich at 763-764.

First, McGee contends that the trial court's instruction to the jury that the photograph showing Clark wearing the sweatshirt on which was printed "RIP MAV" was "offered to show that you have these different groups or gangs as had been referred to" essentially constituted a finding that the photograph showed gang affiliation. We disagree.

The applicable test for determining the effect of comment by the trial judge is whether what occurred prevented defendant from having a fair and impartial trial. *People v Roby*, 38 Mich App 387, 389; 196 NW2d 346 (1972). "[I]nstructions to the jury must be reviewed as a whole." *People v McGee*, 33 Mich App 331, 333; 189 NW2d 863 (1971). Our review of the record convinces us that any effect the trial court's comment may have had on defendant's right to a fair and impartial trial was not so egregious that it was not cured by the trial court's instructions. The court told the jury that it must base its decision on properly admitted evidence, that the court's summary of the evidence was not itself evidence, that the court's comments were not meant to influence a juror's vote or convey the court's opinion of the case, and that the jury was to ignore any opinion it thought the court had about the case. It is well established that jurors are presumed to follow their instructions. *Graves*, 458 Mich at 486.

Next, defendant McGee contends that referring to evidence introduced to impeach McGee as an example of evidence that is used for a limited purpose put McGee in an

-14-

unfavorable light and constituted an improper comment on his credibility in direct violation of MCR 2.513(M) ("The court shall not comment on the credibility of witnesses or state a conclusion on the ultimate issue of fact before the jury."). Once again, we disagree. Considering the comment at issue, the court's final instructions described above, and the presumption that the jury followed that instruction, it cannot be said that the court's comment constituted plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763. Therefore, defendant's claim of error with regard to this comment fails.

## 2. DOCKET NO. 323369 (CLARK)

In a brief filed on his own behalf, defendant Clark asserts that the trial judge's "intimidating, argumentative, and prejudicial" questions deprived him of a fair trial. We review the trial court's comments to determine whether they "were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *People v Conley*, 270 Mich App 301, 308; 715 NW2d 377 (2006) (quotation marks and citations omitted).

"The court may interrogate witnesses, whether called by itself or by a party," MRE 614(b), particularly "to clarify testimony or elicit additional relevant information." *People v Conyers*, 194 Mich App 395, 404; 487 NW2d 787 (1992). However, a trial court's questions cannot "pierce the veil of judicial impartiality," *People v Davis*, 216 Mich App 47, 50; 549 NW2d 1 (1996), and "the trial court must exercise caution and restraint to ensure that its questions are not intimidating, argumentative, prejudicial, unfair, or partial." *Conyers*, 194 Mich App at 405. "The appropriate test to determine whether the trial court's comments or conduct pierced the veil of judicial impartiality is whether the trial court's conduct or comments were of such a nature as to unduly influence the jury and thereby deprive the appellant of his right to a fair and impartial trial." *Conley*, 270 Mich App at 308.

Clark contends that the trial court's questions highlighting the age difference between him and Patton, and calling attention to his associating with someone six years his junior, was belittling. He also contends that the questions about where he lived were intimidating because they were directed toward labeling him as a Sheridan Park Gang member. Finally, observing that the only witness who testified that he had fired a gun was Malik Jordan, whom defense counsel impeached with prior inconsistent testimony, defendant Clark argues that, in a situation where it was his word against Malik's, the trial court's interrogation undermined his credibility.

After reviewing the interrogation at issue, we find that the trial court's questions were directed toward clarifying Clark's earlier testimony and were relevant to matters at issue. *Conyers*, 194 Mich App at 404. Questions about the age discrepancy between defendant and Patton arguably related to Clark's denial that he was Patton's "body guard," and attempted to elicit testimony about the precise nature of Clark's relationship with Patton. Questions about where defendant lived related to defendant's denial of living in Sheridan Park and associating with any "Sheridan Park Gang." Finally, although Malik Jordan was the only witness who testified that Clark fired a gun, he was not the only witness to testify that Clark had a gun at the pre-prom event. Thus, the trial court's questions about the cell phone Clark implied some witnesses mistook for a gun gave Clark an opportunity to enhance his credibility with a believable explanation for the misperception.

-15-

The trial court did not question Clark about matters the prosecutor had not already asked about or about matters the prosecutor was likely to miss, nor did the court's questions elicit testimony so damaging as to lead to the perception that it was helping the prosecution. See *US v Saenz*, 134 F3d 697 (CA 5, 2008) (analyzing a claim of judicial misconduct under FRE 614, which is identical to MRE 614). In addition, the trial court instructed the jury to decide defendant Clark's guilt based on the evidence, that the court's questions were not evidence, that its comments were not meant to influence a juror's vote, and that the jury should ignore any opinion it thinks the court has about disposition of the case. Given the presumption that the jury follows the trial court's instructions, *Graves*, 458 Mich at 486, the court's final question to defendant Clark does not seem so egregious that these instructions could not cure any prejudice created thereby. Therefore, because the trial court's questions were relevant and clarified Clark's earlier testimony, and because the court's instructions to the jury were sufficient to cure any prejudice arising from the court's final pointed question, we conclude that the court did not "deprive the appellant of his right to a fair and impartial trial." *Conley*, 270 Mich App at 308.

Finally, Clark argues that his minimum sentence for assault with intent to murder exceeds the recommended guidelines range because it carries the same sentence as his second-degree murder conviction. Defendant Clark does not dispute that his presentence investigative report correctly scored the highest offense in accordance with MCL 777.14(2)(e)(*ii*) and (*iii*) and *People v Mack*, 265 Mich App 122, 128; 695 NW2d 342 (2005). Thus, he acknowledges the current state of the law, but seeks to preserve this issue in the event that the Michigan Supreme Court grants leave to appeal on the issue.

## III. CONCLUSION

We conclude that the trial court did not abuse its discretion by refusing defendants' motions for separate trials, by admitting Thomas's Facebook posting, or admitting evidence of gang-related photographs. We also find no evidentiary or instructional errors. Finally, we conclude that the evidence was sufficient to support defendants' convictions.

Affirmed.

/s/ Jane E. Markey
/s/ Donald S. Owens
/s/ Mark T. Boonstra

-16-