*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TRAVONTE MARCEL BROWN,

        Defendant-Appellant.

UNPUBLISHED
February 21, 2019

No. 341321
Saginaw Circuit Court
LC No. 17-043543-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRISCO DEQOUNTERRIO SUTTON,

        Defendant-Appellant.

No. 341806
Saginaw Circuit Court
LC No. 17-043542-FC

Before: M. J. KELLY, P.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In these consolidated cases, defendants Travonte Brown and Brisco Sutton appeal as of right their convictions of assault with intent to murder, MCL 750.83, conspiracy to commit assault with intent to do great bodily harm, MCL 750.157a; MCL 750.84, and two counts each of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. In Docket No. 341806, the trial court sentence Sutton to serve 14½ to 30 years for the assault with intent to murder conviction, 5 to 10 years for the conspiracy conviction, and 2 years for the felony-firearm convictions. In Docket No. 341321, the trial court sentenced Brown to serve 12 to 20 years for the assault with intent to murder conviction, 5 to 10 years for the conspiracy conviction, and 2 years for the felony-firearm convictions. For both defendants, the sentences for the assault and conspiracy convictions are concurrent to each other, but consecutive to the felony-firearm convictions. In Docket No. 341806, we affirm Sutton's convictions and

-1-

sentences. In Docket No. 341321, we affirm Brown's convictions, but we vacate his sentences and remand for resentencing.[1]

## I. BASIC FACTS

This case arises out of a shooting. On February 18, 2017, Sutton and Brown travelled to the home of Everlena Huddleson. When they arrived, Sutton climbed onto the hood of the vehicle and, with a gun in his hand, yelled at the house's occupants to come out and fight. Brown banged on the front door until Huddleson opened it. Huddleson testified that Brown asked where the "men were" and told her to tell them to "come out and fight." Huddleson recounted that she told him to leave and that there were no "men" present. She stated that, at one point, Brown shoved the door open further, knocking her back against the couch. Around the same time, Antonio Buford, Huddleson's son, entered the room and exchanged words with Brown, who told him to come outside. Huddleson testified that she saw Sutton come up the stairs, then she heard a gunshot and Buford bent down and held his abdomen. Buford made his way to the bathroom dripping blood, and Brown and Sutton left. At trial, Brown testified that he went to Huddleson's house because he saw the light on and wanted to resolve a dispute with Alonzo Mallet. Brown explained that in the days leading up to the shooting, Mallet had come to Brown's house drunk, waving a machete, and demanding that Brown come out and fight him. Brown stated that he did not intend to commit the crimes charged and had no knowledge of whether Sutton intended to commit the crimes. Sutton admitted that he shot Buford, but he claimed he acted in self-defense.

## II. SUFFICIENCY OF THE EVIDENCE

## A. STANDARD OF REVIEW

Defendants argue that there is insufficient evidence to sustain their convictions. Challenges to the sufficiency of the evidence are reviewed de novo. *People v Ericksen*, 288 Mich App 192, 195; 793 NW2d 120 (2010). In reviewing whether a conviction is supported by sufficient evidence, this Court examines the evidence presented to the jury in a light most favorable to the prosecution to determine whether a jury could have found that the prosecution proved the elements of the crime beyond a reasonable doubt. *People v Gaines*, 306 Mich App 289, 296; 856 NW2d 222 (2014). The reviewing court is required to draw all reasonable inferences and resolve all credibility questions in support of the verdict. *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000).

---

[1] The jury acquitted both defendants of a number of additional charges, including first-degree home invasion, conspiracy to commit first-degree home invasion, a count of felony-firearm with home invasion as the predicate felony, and assault and battery. Additionally, the jury only convicted defendants of conspiracy to commit assault with intent to commit great bodily harm, which was a lesser included offense of a charge of conspiracy to commit assault with intent to murder.

## B. ANALYSIS

"The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citation omitted). Both defendants argue that the prosecution presented insufficient evidence to sustain their convictions of assault with intent to commit murder. We address each in turn.

Sutton argues that there was insufficient evidence to convict him because he did not have an actual intent to kill Buford when he shot him in the stomach. The jury may infer intent from "the nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985) (quotation marks and citation omitted). Additionally, intent to kill can be inferred from the use of a deadly weapon. *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014). Viewing the facts in the light most favorable to the jury's verdict, Sutton and Brown travelled to Huddleson's house sometime between 4:00 a.m. and 5:30 a.m. When they arrived, Sutton climbed onto the hood of their vehicle, held his gun in his hand, and yelled for the occupants of the house to come out and fight, and Brown banged on the door until it was opened. When Buford appeared in the hallway, Sutton aimed his gun and pulled the trigger, striking Buford in the stomach. Therefore, we hold that the evidence was sufficient to justify a rational trier of fact to find beyond a reasonable doubt that Sutton assaulted Buford with the intent to kill.

Sutton also contends that the evidence was insufficient because the prosecution failed to prove beyond a reasonable doubt that he was not acting in lawful self-defense when he shot Buford. A person may use deadly force against another if he or she is not engaged in the commission of a crime at the time, has the legal right to be at the location, and "honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual." MCL 780.972(1)(a). Because self-defense is an affirmative defense, the defendant bears the initial burden of producing some evidence of it. *People v Lemons*, 454 Mich 234, 247-248; 562 NW2d 447 (1997). "Once evidence of self-defense is introduced, the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993). In support of his self-defense claim, Sutton testified that before the shooting, Buford had threatened to kill him and had, on one occasion, shot at him while he was on the street. He stated that on the morning of the shooting, he observed Buford with a gun and, in light of his prior history with Buford, he fired a shot. Brown also testified that he saw Buford with a gun before the shooting. However, contrary to defendants' testimony, Buford testified that he did not have a gun, and Buford's mother testified that she did not see Buford with a gun. Therefore, although Brown and Sutton testified to a different sequence of events, it is not the role of this Court to interfere with a jury's "determinations regarding the weight of the evidence or the credibility of witnesses." *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014). Thus, viewing the evidence in the light most favorable to the jury's verdict, there was sufficient evidence that Buford did *not* have a gun, which negates Sutton's claim that he acted to prevent

*imminent* death or *imminent* great bodily harm from being inflicted on himself or Brown. Consequently, Sutton's sufficiency of the evidence argument is without merit.

Brown was convicted of assault with intent to commit murder on an aiding-and-abetting theory. The elements of aiding and abetting are

> (1) the crime charged was committed by the defendant or some other person; (2) the defendant performed acts or gave encouragement that assisted the commission of the crime; and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time that [the defendant] gave aid and encouragement. [*People v Robinson*, 475 Mich 1, 6; 715 NW2d 44 (2006) (quotation marks and citations omitted).]

Additionally, "[a] defendant is criminally liable for the offenses the defendant specifically intends to aid or abet, or has knowledge of, as well as those crimes that are the natural and probable consequences of the offense he intends to aid or abet." *Id.* at 15. "Therefore, the prosecutor must prove beyond a reasonable doubt that the defendant aided or abetted the commission of an offense and that the defendant intended to aid the charged offense, knew the principal intended to commit the charged offense, or, alternatively, that the charged offense was a natural and probable consequence of the commission of the intended offense." *Id.*

As explained above, there is sufficient evidence to establish that Sutton committed the crime of assault with intent to murder. Additionally, there is sufficient evidence to establish that Brown performed acts that assisted the commission of the crime. The record reflects that he drove Sutton to the Huddleson's residence, banged on the front door until it was opened, demanded that the "men" come out and fight, and shoved the door open wider. Buford was shot through the open doorway. The question on appeal is whether there is sufficient evidence that, at the time, he provided the above assistance he intended the commission of the crime or had knowledge that Sutton intended it when he gave aid and encouragement. Viewing the evidence in the light most favorable to the jury's verdict, Buford and Sutton had a hostile history that included attempts by Buford to kill, or at the least intimidate, Sutton, by shooting at him. There was also testimony that Mallet, a member of Buford's household, was regularly visiting Brown's house with a knife or a bottle and demanding that Brown or Sutton come out and fight him. With that history in mind, Brown testified that when he saw the lights on at the house, he decided to confront Mallet. By his own words, he wanted the "men" to come out and fight. At that time, Sutton was on the hood of the car, holding a gun and yelling for the occupants of the house to come out and fight. Brown had been asked to leave—several times—by Huddleson, but he refused to do so. Taking those facts into consideration, the jury could reasonably infer that Brown went to the house looking for a fight. He banged on the door knowing that Sutton had a gun in his hand. He refused to leave and repeatedly demanded that the men come out of the house and fight. Thus, at the time he provided aid to Sutton, the jury could infer that he knew Sutton intended the commission of the crime. Or, alternatively, he knew that the natural and probable consequences of the crime included that someone would be shot and could die. There was sufficient evidence to support Brown's conviction of assault with intent to commit murder.

-4-

Next, defendants both argue that there was insufficient evidence to support their convictions of conspiracy of assault with intent to do great bodily harm. The elements of assault with intent to do great bodily harm less than murder include the following: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Parcha*, 227 Mich App 236, 239; 575 NW2d 316 (1997). "A criminal conspiracy is a partnership in criminal purposes, under which two or more individuals voluntarily agree to effectuate the commission of a criminal offense." *People v Jackson*, 292 Mich App 583, 588; 808 NW2d 541 (2011). Conspirators "must specifically intend to combine to pursue the criminal objective, and the offense is complete upon the formation of the agreement." *Id.* Proof of a conspiracy may be in the form of circumstantial evidence. *Id.* Thus, the prosecution need not present direct proof of the conspiracy and can instead establish the conspiracy using the circumstances, acts, and conduct of the parties. *People v Martin*, 271 Mich App 280, 317; 721 NW2d 815 (2006).

Viewing the evidence in the light most favorable to the prosecution, a rational jury could infer that after being harassed by Mallet for a number of days and after being shot at by Buford, Brown and Sutton decided to take matters into their own hands. Brown woke Sutton sometime between 4:00 a.m. and 5:30 a.m. and they went to Huddleson's house. Once there, Sutton stood on the hood of the vehicle, yelling for a fight, and holding a gun in his hand. Brown went up the steps, opened the screen door, and banged on the inside door until Huddleson opened it. He then demanded, repeatedly, that the men in the house come out and fight. The record reflects that Brown and Sutton knew the occupants of the house included Buford and Mallet, so the demand that the "men" come out was a demand that both Buford and Mallet emerge. And both Brown and Sutton were yelling for the men to come out to fight. When issuing that challenge, Sutton had a gun in his hand. Although Brown claimed he did not know Sutton had a gun, the jury could reasonably infer that he saw Sutton on the hood of the vehicle with the gun in his hand. Moreover, Sutton testified that he carried a gun on a daily basis, and there was testimony that Sutton and Brown were "like brothers." Based on that testimony, the jury could reasonably infer that Brown knew Sutton carried a gun on his person as a matter of course. Thus, a jury could infer, based on the actions and circumstances, that Brown and Sutton formed an agreement to travel to Huddleson's residence and assault the men living there. Further, given that they brought a drawn gun into their challenge, the jury could also infer that they intended to inflict great bodily harm on Buford and Mallet should the circumstances permit. The jury's verdict against both defendants is supported by the evidence.

Finally, both defendants argue that, because there was insufficient evidence to support their convictions for assault with intent to murder and conspiracy to commit assault with the intent to do great bodily harm, their convictions for felony-firearm are likewise supported by insufficient evidence. The elements of felony-firearm are "(1) the defendant attempted to commit a felony or committed a felony (2) while he or she had a firearm in her or her possession . . . ." See *People v Bryant*, 319 Mich App 207, 212; 900 NW2d 360 (2017). Given that there is sufficient evidence to support the jury's finding that each defendant committed two felonies while possessing a firearm, there is also sufficient evidence to support their convictions of felony-firearm.

## III. PROSECUTORIAL MISCONDUCT

### A. STANDARD OF REVIEW

Brown argues that the prosecutor's improper, sarcastic remarks during cross-examination denied him a fair trial. Unpreserved issues involving prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). "Reversal is warranted only when plain error resulted in the conviction of an innocent defendant, or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008) (quotation marks and citation omitted).

### B. ANALYSIS

"The test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Prosecutorial misconduct issues are decided on a case-by-case basis, and the reviewing court must examine the record and evaluate challenged remarks in context. *People v Mann*, 288 Mich App 114, 119 (2010); 792 NW2d 53 (2010). Prosecutorial comments must be evaluated as a whole in the light of the relationship that they bear to the evidence admitted at trial as well as to the arguments from the defense. *Brown*, 279 Mich App at 135.

At trial, Brown testified that Sutton was "like a brother" to him. The prosecutor then used the descriptive phrase "like-a-brother" when asking Brown questions about Sutton. We discern no impropriety in the prosecutor's remarks. They were based on Brown's testimony and were used to undermine his theory of the case given that he denied knowing of Sutton's firearm and denied conspiring with Sutton to assault anyone living at Huddleson's house. The fact that the prosecutor did not advance his case using "the blandest possible terms," does not constitute prosecutorial misconduct. *Dobek*, 274 Mich App at 66. Similarly, given that Brown testified that he asked his mother for help when confronting Mallet, the prosecutor's comment on that evidence was not improper. Moreover, when viewed in context, the prosecutor was seeking to establish the sequence of events leading up to the shooting and bring to light inconsistencies between Brown's testimony and his mother's testimony. For instance, Brown's mother testified that she was woken by Mallet, but Brown testified that he woke his mother so she would send Mallet away before Brown went out and "beat" him. There is no prosecutorial misconduct.[2]

---

[2] Given that there was no prosecutorial misconduct, Brown's lawyer did not provide ineffective assistance by failing to object to it. See *Ericksen*, 288 Mich App at 201 (stating that failing to raise a meritless or futile objection does not constitute ineffective assistance).

# IV. INEFFECTIVE ASSISTANCE

## A. STANDARD OF REVIEW

Sutton argues that his lawyers provided ineffective assistance. Because he did not preserve his challenge to his lawyer's effectiveness, our review is limited to errors apparent on the existing record. *People Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004).

## B. ANALYSIS

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012), citing US Const, Am VI; Const 1963, art 1, § 20. Effective assistance of a lawyer is presumed and the defendant bears a heavy burden of proving otherwise. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). To establish ineffective assistance of a lawyer, a defendant must show (1) that his lawyer's performance fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for his lawyer's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 691-692; 104 S Ct 2052; 80 L Ed 2d 674 (1984).

Sutton argues that his lawyer was ineffective for failing to introduce a video of Buford threatening to kill him. However, although a video was apparently available showing that Buford threatened Sutton, it appears that Sutton's lawyer made a strategic decision to introduce evidence of the threats through testimony from Sutton and Sutton's grandmother. See *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (opinion by COOPER, J.) (stating that what evidence to present, including whether to call or how to question witnesses, is presumed to be a matter of trial strategy which this Court will not second-guess with the benefit of hindsight). Moreover, even if Sutton's lawyer's performance was deficient on this basis, Sutton cannot establish prejudice. Evidence of the threats was already before the jury, and, given that it rejected the self-defense theory, cumulative evidence supporting the existence of threats was not outcome determinative.

Next, Sutton argues that his lawyer should have cross examined the prosecution's witnesses differently with respect to whether Buford's home was searched for a gun. Sutton does not specify which witness or witnesses his lawyer should have cross examined and exactly what additional questions should have been asked. Nor has Sutton made an offer of proof as to what the witnesses would have testified to had they been more thoroughly cross-examined on this point. The record does show, however, that a police detective testified he did not conduct a search of Buford's premises to see whether the latter possessed a firearm, and Sutton's lawyer used that fact during his closing argument. Given that the evidence on this point was used, and it is unclear what additional evidence may have been adduced, we conclude that Sutton has failed to establish his lawyer was ineffective on this basis.

## V. SENTENCING

## A. STANDARD OF REVIEW

In a brief filed by his appellate lawyer and in a supplemental brief filed by Brown on his own behalf, Brown argues that the trial court erred when it scored offense variables (OVs) 2, 3, 5, and 9. We review for clear error a court's factual findings related to the scoring of the sentencing guidelines. *People v Hardy*, 494 Mich 430, 439; 835 NW2d 340 (2013). The court's application of the facts to the law is reviewed de novo. *Id.* "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *People v Brooks*, 304 Mich App 318, 319-320; 848 NW2d 161 (2014) (quotation marks and citation omitted). Unpreserved scoring issues are reviewed for plain error affecting substantial rights. *People v Chelmicki*, 305 Mich App 58, 69; 850 NW2d 612 (2014). "To avoid forfeiture of the issue under the plain error rule, the defendant bears the burden to show that 1) the error . . . occurred, 2) the error was plain, i.e. clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* (quotation marks and citations omitted; alterations in original). For purposes of scoring the guidelines, a sentencing court's factual determinations need only be supported by a preponderance of the evidence. *Hardy*, 494 Mich at 438.

## B. ANALYSIS

OV 2 of the sentencing guidelines addresses the lethal potential of a weapon possessed or used during the commission of the offense. MCL 777.32(1). The court must assess 5 points if the offender possessed or used a pistol. MCL 777.32(1)(d). Brown, in his supplemental brief, argues that there was no evidence that he possessed a firearm during any part of the incident in question, and he also points out that he testified that he did not know that Sutton was armed. However, "[i]n multiple offender cases, if 1 offender is assessed points for possessing a weapon, all offenders shall be assessed the same number of points." MCL 777.32(2). The latter subsection shows no concern for whether those other offenders knew, or reasonably should have known, that the other was in possession of a weapon. Because Sutton admitted that he possessed a pistol when he shot Buford, and because Sutton was assessed 5 points for OV 2, the trial court properly scored 5 points for OV 2.

OV 3 addresses physical injury to the victim. MCL 777.33(1). The court must assess 25 points if a "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33(1)(c). Brown's appellate lawyer argues that Buford's gunshot wound could not be considered a life-threatening or permanent injury because the prosecution did not present evidence specifying the extent of his injuries. However, the prosecution need not present medical evidence to show that a victim suffered life-threatening injuries, and a court may rely on witness testimony to justify its OV scores. *People v McCuller*, 479 Mich 672, 697 n 19; 739 NW2d 563 (2007). Buford suffered a gunshot wound to the abdomen, which caused him to bend over and lose blood. He was transported to the hospital as a result of the shooting. The court also had before it video footage showing Buford's condition when he was being interviewed by a detective while in the emergency room. Although medical documentation was not introduced to show what treatment Buford received at the hospital, the presentence investigative report (PSIR)

indicates that the bullet that struck Brown did not exit his body. This evidence, considered along with the common knowledge that a gunshot wound to the abdomen may be fatal, supported the conclusion that a score of 25 points for OV 3 was appropriate in this instance.

OV 5 addresses psychological injury to a member of a victim's family. MCL 777.35(1). A court must assess 15 points if a "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). The fact that professional treatment has not been sought is not conclusive. MCL 777.35(2). Here, the court awarded 15 points after finding that Buford's mother suffered serious psychological injury from seeing her son shot. However, there is no evidence that Huddleson sustained any psychological injury, and the prosecution concedes that OV 5 was scored incorrectly. Because correcting the scoring of OV 5 occasions a shift in the applicable guidelines range, we remand to the trial court for resentencing. See *People v Francisco*, 474 Mich 82, 92; 711 NW2d 44 (2006) (reliance on an incorrect guidelines range constitutes reliance on inaccurate information and requires resentencing).

Finally, Brown contends that the court erred by scoring OV 9 at 10 points. OV 9 addresses the number of victims. MCL 777.39(1). Ten points must be assessed if "[t]here were 2 to 9 victims who were placed in danger of physical injury or death . . . ." MCL 777.39(1)(c). Here, when the gun was fired, Buford and Buford's mother were both standing in close proximity, as was Brown. A victim need not have actually suffered harm; proximity to a physically threatening situation may suffice. *People v Gratsch*, 299 Mich App 604, 624; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013). Accordingly, there were at least two victims placed in danger of physical injury or death when Sutton fired his gun through the open doorway.[3]

## IV. CONCLUSION

For the reasons stated, we vacate Brown's sentence for his conviction of assault with intent to murder and conspiracy to commit assault with intent to do great bodily harm and remand his case to the trial court for resentencing. We affirm Brown's convictions. We affirm Sutton's convictions and sentences.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Deborah A. Servitto
/s Mark T. Boonstra

---

[3] Brown argues that his lawyer was ineffective for failing to object to the court's scoring decision for several of the OVs. However, the court did not err by assessing points for OVs 2, 3, and 9. Accordingly, to the extent that Brown's lawyer did not object to the scoring of those OVs, his performance was not deficient. See *Ericksen*, 288 Mich App at 201. Moreover, although OV 5 was scored incorrectly, we are remanding for correction of that error.