*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CERENO TERILL LOPEZ,

Defendant-Appellant.

UNPUBLISHED
March 26, 2019

No. 341089
Ingham Circuit Court
LC No. 17-000451-FC

Before: METER, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant, Cereno Lopez, appeals as of right his jury trial convictions for assault with intent to commit murder, MCL 750.83, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to 17.5 to 55 years' imprisonment for his assault with intent to commit murder conviction and a consecutive two years' imprisonment for his felony-firearm conviction. We affirm.

## I. BASIC FACTS

On April 27, 2017, police were dispatched to a shooting in Lansing Township. The victim, the "on again off again" boyfriend of defendant's mother, had been shot in the shoulder and groin area. A neighbor of defendant's mother saw a man fleeing the scene (defendant's mother's house) with "something" in his hands. Another neighbor also identified defendant as fleeing the scene with a semi-automatic weapon in his hand. Yet another neighbor provided law enforcement with surveillance footage that captured the physical altercation and subsequent shooting that took place. One police officer, Officer Patrick Herson, was familiar with defendant and identified him as the shooter in the surveillance video. The victim survived the shooting, but was uncooperative with police, refused to identify who shot him, and did not testify at trial. His only statement to police, taken at the hospital on the night of the shooting, was "my big homie shot me."

A warrant was issued for defendant's arrest and a few weeks later, he was arrested during a traffic stop conducted by Lieutenant Sandra Lantz. Once placed in the patrol vehicle, defendant requested that the Lieutenant retrieve his cell phone from the car. Officer Lantz

-1-

retrieved the phone, placed it on "airplane mode," turned it off, and collected it as evidence. She did not search its contents, but she testified that the home screen depicted defendant holding "a wad of cash" and a semi-automatic handgun was on his lap. Police obtained a search warrant and incriminating text messages were found, as well as pictures depicting defendant with guns.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that there was insufficient evidence to support his conviction of assault with intent to commit murder because the prosecution failed to prove beyond a reasonable doubt that he intended to kill the victim. We disagree.

Whether there was sufficient evidence presented to sustain a defendant's conviction is reviewed de novo by this Court. *People v Haverson*, 291 Mich App 171, 177; 804 NW2d 757 (2010). We review "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011) (quotation marks and citation omitted).

> The standard of review is deferential: a reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. The scope of review is the same whether the evidence is direct or circumstantial. Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime. [*People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted).]

To establish that a defendant is guilty of assault with intent to commit murder pursuant to MCL 750.83, "the prosecution must establish (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Hoffman*, 225 Mich App 103, 111; 570 NW2d 146 (1997). Defendant challenges only the intent element of this offense. "The intent to kill may be proven by inference from any facts in evidence." *Id*. Moreover, "[b]ecause intent may be difficult to prove, only minimal circumstantial evidence is necessary to show a defendant entertained the requisite intent." *Haverson*, 291 Mich App at 178. In determining whether a defendant possessed the intent to kill, the jury should consider all circumstances, including (1) "the nature of the defendant's acts constituting the assault;" (2) "the temper or disposition of mind with which they were apparently performed;" (3) "whether the instrument and means used were naturally adapted to produce death;" and, (4) the defendant's prior, contemporaneous, and subsequent conduct and declarations. *People v Taylor*, 422 Mich 554, 568; 375 NW2d 1 (1985) (quotation marks and citation omitted).

Regarding the "nature of defendant's acts constituting the assault," only two witnesses testified about an altercation that immediately preceded the shooting, and neither was able to identify the participants. One witness testified, however, that the shooter was not the same person that was engaged in the physical alteration. Despite the lack of eyewitnesses, the jury was able to view surveillance video of the altercation, as well as still images created from it. The images apparently depict a physical altercation, and then show defendant obtaining a firearm and firing at the victim. The images would support a determination that defendant (who may or may not have been a participant in the physical alteration) obtained a firearm and then shot the victim

at close range. This circumstantial evidence supports the jury's verdict that defendant intended to kill the victim. *Haverson*, 291 Mich App at 178.

Regarding "the temper or disposition" of defendant's mind during the shooting, *Taylor*, 422 Mich at 568, there was some evidence at trial that the victim was verbally and physically abusive to defendant's mother ,and that defendant disliked the victim because of it. Defendant, however, denied this. This circumstantial evidence, is minimally probative of defendant's intention, but, paired with other evidence it supports the jury's inference that defendant intended to kill the victim. *Haverson*, 291 Mich App at 178.

Regarding the "instrument and means" used by defendant and whether they were "naturally adapted to produce death," *Taylor*, 422 Mich at 568, a firearm is undoubtedly an instrument "naturally adapted to produce death." Further, the surveillance video showed defendant firing at the victim from only a few feet away, and a trauma surgeon testified that the victim had "gunpowder tattooing," which indicated "relatively close proximity of the shooter." The trauma surgeon also testified that the victim was "level one, immediate risk of life and limb" when admitted, and that the victim was "relatively fortunate" that no major structures or blood vessels were damaged. That defendant fired at the victim from close range with a lethal weapon and inflicted the injuries he did supports the determination that defendant intended to kill the victim.

Finally, regarding defendant's "conduct and declarations prior to, at the time, and after the assault," *Taylor*, 422 Mich at 568, immediately after the shooting defendant fled the scene. Flight can be used as circumstantial evidence of intent. *People v Carines*, 460 Mich 750, 761; 597 NW2d 130 (1999). Furthermore, a few hours after the shooting, defendant sent a text message stating, "THT NIGGA" followed by three skull emojis, and another text message stating, "my neighbors know everything" and indicating that his neighbor across the street, "was outside." These messages stand in contrast to defendant's testimony at trial that he was babysitting at the time of the shooting and that he did not learn of it until the next morning. This circumstantial evidence would support a determination that defendant intended to kill the victim. Viewed in a light most favorable to the prosecution, there was sufficient evidence presented of the elements of the crime of assault with intent to commit murder to sustain the jury verdict. *Williams*, 294 Mich App at 471.

## III. FOURTH AMENDMENT VIOLATIONS

Defendant next argues that his right to be free from unreasonable searches and seizures was violated when police seized his phone and when they subsequently searched his phone pursuant to a warrant. However, defendant did not challenge the constitutionality of the seizure or the search warrant and, therefore, this issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Unpreserved claims of constitutional error are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 753. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763.

Both the United States Constitution and the Michigan Constitution guarantee the right of the people to be free from unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11; *People v Kazmierczak*, 461 Mich 411, 417; 605 NW2d 667 (2000). "The lawfulness of a search or seizure depends on its reasonableness." *People v Beuschlein*, 245 Mich App 744, 749; 630 NW2d 921 (2001). Searches and seizures conducted without a warrant are generally unreasonable per se unless the conduct of law enforcement falls under an established exception to the warrant requirement. *Id*. "[T]he ultimate determination whether a particular search is reasonable is fact-intensive and must be measured by examining the total circumstances of each case." *People v Barbarich*, 291 Mich App 468, 473; 807 NW2d 56 (2011). Generally, evidence seized in violation of the constitutional prohibitions against unreasonable searches and seizures is excluded from trial. *Id*.

Defendant first argues that the police seized his phone without a warrant or probable cause. The arresting officer testified that, after defendant was arrested and placed in a patrol car, defendant requested she bring him his cell phone. She retrieved the phone from the car that defendant had been traveling in and, after defendant identified it, she retained it for evidence. This seizure was reasonable pursuant to the plain view exception to the warrant requirement. "The plain view doctrine allows police officers to seize, without a warrant, items in plain view if the officers are lawfully in a position from which they view the item, and if the item's incriminating character is immediately apparent." *People v Champion*, 452 Mich 92, 101; 549 NW2d 849 (1996). The arresting officer was in a lawful position to view the phone because she performed a valid traffic stop in order to execute a lawful arrest warrant. Furthermore, defendant asked her to retrieve it for him and, therefore, when she did so she was in a lawful position to view the item. Therefore, we focus on whether the phone had an "immediately apparent incriminating character," which means that, without further search, there was probable cause to seize the item. *Id*. at 101-103. Where "further investigation [is] necessary to establish a connection between [an item] and the suspected criminal activity," the incriminating nature of an item is not "immediately apparent" and the plain view exception does not apply. *People v Mahdi*, 317 Mich App 446, 462-463; 894 NW2d 732 (2016).

In the midst of his arrest, defendant requested that his phone be retrieved from the vehicle, which could have suggested to the officer that he intended to destroy evidence on it. Furthermore, the arresting officer testified that when she retrieved the phone she saw that the home screen was a picture of defendant "holding up what looked like a wad of cash, and with a black semi-automatic, looked like a real handgun, in his lap." Defendant was being arrested for assault with intent to commit murder after he shot the victim with a handgun. Her view of this picture would support a determination that she possessed probable cause for "inferring a fair probability that evidence of a crime" existed on the cell phone. *People v Kazmierczak*, 461 Mich 411, 418; 605 NW2d 667 (2000). We conclude that the seizure was justified under the plain view exception to the warrant requirement because the officer was at a lawful vantage point and no "further investigation" was required to establish that the phone may contain evidence related to defendant's crime.

-4-

Next, defendant argues that the search warrant procured by law enforcement was invalid because it was overly broad in violation of the particularity requirement of the Fourth Amendment.[1] "A search warrant must particularly describe the place to be searched and the persons or things to be seized." *People v Unger*, 278 Mich App 210, 245; 749 NW2d 272 (2008). The specificity required depends on the circumstances involved and the type of items to be searched. *Id*. "The purpose of the particularity requirement in the description of items to be seized is to provide reasonable guidance to the executing officers and to prevent their exercise of undirected discretion in determining what is subject to seizure." *Id*. (quotation marks and citation omitted). It is "well-settled that a search may not stand on a general warrant." *People v Hellstrom*, 264 Mich App 187, 192; 690 NW2d 293 (2004).

The Sixth Circuit Court of Appeals recently considered the particularity requirement in relation to the search of the contents of a cell phone in *United States v Castro*, 881 F3d 961, 964 (CA 6, 2018). While this decision is not binding, we adopt its persuasive analysis and conclusion. See, *People v Patton*, 285 Mich App 229, 234; 775 NW2d 610 (2009). In *Castro*, the defendant, charged with participation in a string of robberies, argued that evidence collected from her cell phone should have been suppressed because the search warrant "flubbed the particularity requirement" by permitting searches for evidence of "a crime" instead of specifically for aggravated burglary.[2] *Id*. at 963-964. The Sixth Circuit concluded that the

---

[1] The search warrant read, in relevant part:

**2. The PROPERTY to be searched for and seized, if found, is specifically described as:**

Evidence of the crime assault with intent to murder . . . including but not limited to: the entire data contents (active/deleted/drafts) including the SIM cards and any attached data storage media including but not limited to: contacts, call history lists (including received, dialed, and missed calls), pictures including all ExIF and geotagging Information located therein, videos, SMS/MMS Messages, application data, user account information, subscriber/owner information, incoming and outgoing email messages, notes, GPS directions, installed applications, audio files including voicemails and voice memos, Internet usage history, Wi-Fi network information, and call logs.

[2] There were two "nearly identically worded" warrants, which read, in relevant part:

Proof having been made before me under oath by [the investigating officer] that there is probable cause to believe that evidence of violations of Texas Penal Code 29.03 (Aggravated Robbery), exists on named phone device . . . you are hereby COMMANDED to execute a search for but not limited to the following pieces of evidence:

Subscriber information, cell phone location data, business records, photographs, images, depictions[,] correspondence, notes, paper, ledgers, personal telephone and address books, voice messages, text messages, memoranda, telexes, facsimiles, or other documents (in any form printed or digital) which reflect the

particularity requirement was not violated, explaining that "[a] warrant that empowers police to search for something satisfies the particularity requirement if its text constrains the search to evidence of a specific crime." *Id*. at 965 (citation omitted). The first lines of the warrant noted that they were based on probable cause of violations of Texas's aggravated burglary statute, and the court concluded that this "served as a 'global modifier' that limited the scope of the warrant to evidence of aggravated burglary." *Castro*, 881 F3d at 965. Therefore, "[r]ead as a whole, the warrants told officers they could search only for evidence related to aggravated burglary." *Id*.[3]

We reach a similar conclusion in the present case. We recognize that the search warrant authorized the search of a wide range of data and information from defendant's phone. However, this broad authorization was limited to data and information that contained "evidence of the crime assault with intent to murder." We find that the search of a smart phone, like a computer, "may be as extensive as reasonably required to locate the items described in the warrant based on probable cause." *United States v Richards*, 659 F3d 527, 538 (CA 6, 2011). When the search is limited to evidence explicitly authorized in the warrant—here, evidence pertaining to the crime of assault with intent to murder—it is reasonable for officers to search through the data and applications on the phone to determine whether it contains the sought after evidence. *Id*. at 540. The warrant in this case was not free-ranging and directed police officers to search only for evidence of a specific crime. We conclude that it did not violate the particularity requirement. Furthermore, even if it was overbroad, in the absence of official misconduct, defendant is not entitled to suppression of the evidence under the good-faith exception to the exclusionary rule. *People v Goldston*, 470 Mich at 523, 541; 682 NW2d 479 (2004). There is no plain error warranting reversal.[4]

---

receipt, purchase, transmission, and/or communication *of a crime* or any other electronic, magnetic, optical, electrochemical, or high-speed data processing device performing logical arithmetic, or storage functions; hard disk, drum, CD ROM or scanner; communication facilities directly relating to or operating in conjunction with such device, or any other files, deleted or not involved in this or any other unlawful activities. [*Castro*, 881 F3d at 964 (emphasis added).]

[3] The court also noted that the final phrases in the warrants allowing the search for "any other files . . . or any other unlawful activities" did not invalidate the warrant because it was easily severed and because there was nothing in the record to suggest that evidence under that section was collected. *Castro*, 881 F3d at 965-966.

[4] Because we conclude that the evidence presented at trial from the search and seizure of defendant's cell phone did not violate his right against unreasonable searches and seizures, we decline to address defendant's argument that his attorney was ineffective for failing to move to suppress the evidence. Defense counsel cannot be deemed ineffective for not advocating a meritless position or raising a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Affirmed.

/s/ Patrick M. Meter
/s/ Deborah A. Servitto
/s/ James Robert Redford