PEOPLE v GUY TAYLOR

PEOPLE v JOHNSON

PEOPLE v RONALD TAYLOR

Docket Nos. 64115, 69627, 74020. Argued January 9, 1985 (Calendar Nos. 12-14).—Decided September 17, 1985.

Guy D. Taylor was convicted following a bench trial in the Recorder's Court of Detroit, Verne C. Boewe, J., of assault with intent to commit murder, possession of a firearm during the commission of a felony, and possession of a firearm with intent to use the firearm unlawfully against the person of another. The Court of Appeals, N. J. KAUFMAN, P.J., and R. M. MAHER and D. C. RILEY, JJ., affirmed in an unpublished memorandum opinion (Docket No. 78-650). After remand, the decision of the Recorder's Court of Detroit in *Guy Taylor* was vacated and the case was remanded for entry of a judgment of conviction of assault with intent to do great bodily harm less than murder and for resentencing. 424 Mich 1201 (1985).

Marvin Johnson was convicted by a jury in the Recorder's Court of Detroit, Warfield Moore, Jr., J., of assault with intent to commit murder. The Court of Appeals, V. J. BRENNAN and CYNAR, JJ. (N. J. KAUFMAN, P.J., dissenting), affirmed in an opinion per curiam (Docket No. 48041).

Ronald G. Taylor was convicted following a bench trial in the Wayne Circuit Court, William Leo Cahalan, J., of second-degree murder, five counts of assault with intent to commit murder, and possession of a firearm with intent to use the firearm unlawfully against the person of another. The Court of Appeals, J. H. GILLIS, P.J., and T. M. BURNS and ROBINSON, JJ., affirmed in an opinion per curiam (Docket No. 68118).

The defendants appeal.

In an opinion per curiam, signed by Chief Justice WILLIAMS, and Justices LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, with Justice RILEY participating in *Ronald Taylor* only, the Supreme Court *held:*

Actual intent to kill is an element of the crime of assault with intent to commit murder. The intent to inflict great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of an action is to cause death or great

bodily harm, while sufficient to support a conviction of murder, is insufficient to support a conviction of assault with intent to commit murder. The intent to kill need not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from facts in evidence in determining the existence of an intent to kill.

In these cases, the prosecutor correctly conceded that to find the defendants guilty of assault with intent to commit murder it was necessary to find an actual intent to kill. However, in *Guy Taylor* and *Ronald Taylor,* the court, sitting as the trier of fact, did not find an intent to kill. In *Johnson,* the jury was not instructed that it was required to find an intent to kill. Thus, in *Johnson* and *Ronald Taylor,* remand is required for entry of a judgment of guilty of assault with intent to do great bodily harm less than murder and for resentencing or for a new trial on the original charge. In *Guy Taylor,* the findings of fact with regard to the defendant's intent are unclear, requiring remand to the trial court for clarification. Within twenty-one days of the date of this decision, the trial court must file supplemental findings of fact with the clerk of the Supreme Court stating whether Guy Taylor had an actual intent to kill and the basis for its finding. If it finds that he did not possess such an intent, it must find what intent he did possess and state its basis for that finding.

*Johnson* and *Ronald Taylor,* reversed and remanded.

*Guy Taylor,* remanded for clarification.

116 Mich App 452; 323 NW2d 439 (1982) reversed and remanded.

133 Mich App 762; 350 NW2d 318 (1984) reversed and remanded.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Timothy A. Baughman,* Principal Attorney, Research, Training and Appeals, for the people in *Guy Taylor* and *Johnson,* and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people in *Ronald Taylor.*

*Alan L. Kaufman* for defendant Guy Taylor.

State Appellate Defender (by *Peter Jon Van*

*Hoek*) for defendant Johnson and (by *Gail Rodwan*) for defendant Ronald Taylor.

PER CURIAM. The issue in these cases is whether an actual intent to kill is an element of the crime of assault with intent to commit murder. MCL 750.83; MSA 28.278. The prosecution concedes that it is, and we therefore address the question whether to reduce these assault convictions.

I

On October 22, 1977, defendant Guy D. Taylor shot a man named Billy Fuller. The shooting occurred during a confrontation that appears to have been the result of some earlier gang-related animosity. At a bench trial in December of 1977, the defendant was found guilty, as charged, of assault with intent to murder, possession of a firearm during the commission of a felony, and possession of a pistol with the intent to use it unlawfully. MCL 750.83, 750.227b, 750.226; MSA 28.278, 28.424(2), 28.423. In finding the defendant guilty, the trial court made the following findings:

> The Court having heard the testimony of these various witnesses, I think the testimony is without any contradiction whatsoever, that Mr. Taylor did fire his weapon, this .38 derringer which was introduced into evidence, at Mr. Fuller, striking him in the face with the bullet. This certainly constitutes an assault, no question about that. The next question which this Court would have to make a finding of fact on, is whether this assault was with intent to commit murder. That is probably the most difficult part of the elements that the Court has to consider—an assault is very simple, there is no question about that. The question of intent is one that can be inferred by the acts of the individual himself and as I stated yesterday,

the inferences that may be wrought from that is discussed in [*People v Johnson,* 54 Mich App 303, 304; 220 NW2d 705 (1974)], where it says, "The intentional discharge of a firearm at someone within range is an assault. The usual result and purpose of such an assault is death. The unjustified and unexcused intention to kill when committing an assault constitutes the crime charged."

Well, if I recall the testimony correctly of at least two of the witnesses, the words might not have been exactly the same, the general context that Mr. Taylor pointed the gun at Mr. Fuller and said, "I'll show you that this gun isn't shit," which would indicate certainly an intent to shoot him. There is no question about that as set forth in a great many Michigan cases, one of them [*People v Becker,* 300 Mich 562; 2 NW2d 503; 139 ALR 1171 (1942)], which the court said the intent to kill may be evidenced by the nature and the location of the bullet wound in the body of the victim. In this case Mr. Fuller had a bullet wound in his cheek, and of course, if that bullet wound had been three to four inches higher, and a couple of inches to the left, he would have shot him through the forehead. If that would have been the case I think that Mr. Fuller would have been . . . dead rather than in this court testifying in this case and as indicated in other Michigan cases, one of those being [*Wilson v People,* 24 Mich 410 (1872)], because assault must be under circumstances where death ensued, the crime would have been murder. There is no question that Mr. Fuller, had Mr. Fuller died, Mr. Taylor would have been charged with murder and in all probability at the trial would have been found guilty of murder based upon the testimony we have heard today, and I think this indicates enough of the elements of the crime that we have an assault with intent to commit murder and there is no—the same being done with malice. I see no mitigating circumstances, in fact, the fact they were arguing is one thing, but he was in an automobile. He had the opportunity to leave. He wasn't protecting himself, or anything else, he just

stuck his arm out the window and fired it at Mr. Taylor [*sic*], obviously with the intent of hitting him with it. I would say that with intent to murder Mr. Taylor [*sic*], not to do great bodily harm. A definition of malice as indicated in the jury charges is malice means the defendant intended to kill or the conscious—to create a very high degree of misconduct and knowledge of the probable consequences of his act, he did so under circumstances which do not justify, excuse or mitigate the crime and that is exactly what I find here. He created a very high risk death [*sic*] and knowledge of the crime and the consequences of his act, and there are no circumstances which justify, to [*sic*] excuse, or mitigate the crime.

Based upon those findings, I find Mr. Taylor guilty of Count 1, the charge, assault with intent to commit murder and there is no question as to Count No. 2 that he had the weapon in his hands, he committed a felony while in the possession of a firearm and based upon the testimony, it is uncontradicted in this case, therefore I find him guilty of Count 2, possession of a firearm in the commission of a felony. And Count 3, the carrying of a firearm with unlawful intent. There is no question about that. The elements in this crime are that he was armed with a pistol, and second, at the time he was so armed the defendant intended to use this weapon, and third, he intended to use the weapon unlawfully against the person of another. And the testimony in this matter clearly indicates that all three of those elements are present.

The Court will find him, also, guilty of Count 3 in this matter.

The defendant was sentenced to a term of from fifteen to twenty-five years in prison for assault with intent to murder, two years in prison for felony-firearm, and from two to five years in prison for possession of a pistol with the intent to use it unlawfully.

The Court of Appeals affirmed.[1] The defendant then filed a letter request for review pursuant to Administrative Order No. 1977-4, 400 Mich lxvii (1977).[2] This Court directed that counsel be appointed for the defendant. After he filed a delayed application for leave to appeal, we granted leave to appeal.[3] *People v Guy Taylor,* 419 Mich 879 (1984).

## II

On May 19, 1978, Andre Witcher was shot, receiving injuries that have since confined him to a wheelchair. Defendant Marvin Johnson was part of a group of people involved in the melee in which Witcher was shot. Johnson was charged with assault with intent to murder.[4] MCL 750.83; MSA 28.278. The defendant was tried before a jury in June of 1979, and was found guilty as charged. The jury was given the following instructions con-

---

[1] "The defendant was convicted in a bench trial of assault with intent to murder, MCL 750.83; MSA 28.278, possession of a firearm in the commission of a felony, MCL 750.227b; MSA 28.424(2), and carrying a firearm with unlawful intent, MCL 750.226; MSA 28.423. Defendant was sentenced to 15 to 25 years imprisonment on the first count, 2 to 5 years imprisonment on the second count, and 2 years imprisonment on the third count; defendant appeals as of right.

"A review of the record and briefs and the issues raised therein discloses no prejudicial error. See, *Wayne County Prosecutor v Recorder's Court Judge,* [406 Mich 374; 280 NW2d 793 (1979)], *People v Eisenberg,* 72 Mich App 106, 113-115; 249 NW2d 313 (1976), and *People v Johnson,* 54 Mich App 303; 220 NW2d 705 (1974).

"Affirmed." Unpublished memorandum opinion of the Court of Appeals, decided November 1, 1979 (Docket No. 78-650).

[2] *Cf.* Administrative Order No. 1983-4, 417 Mich cxxii (1983); MCR 7.303.

[3] We had earlier held the case in abeyance, pending our decision in *People v Dykhouse,* 418 Mich 488; 345 NW2d 150 (1984). *People v Taylor,* 414 Mich 877 (1982).

[4] He was also charged with possession of a firearm during the commission of the assault, but that charge was later dismissed. MCL 750.227b; MSA 28.424(2).

cerning the intent needed to commit the crime of assault with intent to murder:[5]

> The defendant is charged with the crime of assault with intent to murder. Any person who

[5] Supplemental instructions, given at the jury's request, were similar:

"You ask about the intent. Let me once again tell you that, under the law, two of the crimes that I have charged you on, assault with intent to commit murder, assault with intent to do great bodily harm less than murder, are specific intent crimes. Meaning that they have to be specific intent crimes. Meaning that they have to be specifically intended, the results, in order to find that the defendant is guilty.

"In felonious assault, which I also defined for you, it is what we call a general intent crime. It is not any specific intent. But in the other two there has to be specific intent.

"I will, once again, read to you the charge relative to specific intent. Beginning:

"When a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist.

"Intent is a decision of the mind to knowingly do an act with a conscious, fully formed objective of accomplishing a certain specific result.

"Therefore, there can be no crime of assault with intent to commit murder or—nor can there be any crime of assault with intent to do great bodily harm less than murder, under our law where there is no intent, in the case of assault with intent to do great bodily harm less than murder, where there is no intent to do great bodily harm, and the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent.

"The wrongful intent; that is, the intent to murder or—the intent to do great bodily harm; that is the wrongful intent we're speaking of.

"The intent with which a person does an act is known by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used and all other facts and circumstances, but only if that intent is established by the evidence.

"Therefore, if you find that the defendant, for any reason whatsoever, did not consciously and knowingly act with the intent, first, to murder, then the crime cannot have been committed and you must find the defendant not guilty of the crime of assault with intent to murder.

* * *

"Now, if from all of the evidence you have a reasonable doubt as to whether or not the defendant knowingly and consciously acted with the intent, first, to murder, then you must find the defendant not guilty of the crime of assault with intent to commit murder."

shall assault another with intent to commit the crime of murder is guilty of this crime.

The defendant pleads not guilty to this charge. To establish this charge the prosecution must prove each of the following elements beyond a reasonable doubt:

First, that the defendant, Marvin Johnson, assaulted Andre Witcher, the complainant in this case. An assault, ladies and gentlemen of the jury, is an attempt or threat, with force and violence, to do some immediate bodily harm to another by one who has the present means of doing such harm.

Second, that at the time of committing such an assault the defendant intended to murder the complainant.

Murder, ladies and gentlemen of the jury, is the killing of one person by another with malice. Malice is a term with special meaning in the law. Malice means that the defendant intended to kill or that he consciously created a very high degree of risk of death with knowledge of the probable consequences of his act and that he did so under circumstances which did not justify, excuse or mitigate the crime.

Those are the elements, ladies and gentlemen, that the People must show to prove the crime of assault with intent to commit murder.

\* \* \*

Ladies and gentlemen of the jury, the first two charges that I've charged you on; that is, assault with intent to commit murder and assault with intent to commit great bodily harm or do great bodily harm less than murder, are what we call specific intent crimes, and I will now define for you, under the law, what is specific intent.

Beginning: When a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist.

Intent is a decision of the mind to knowingly do an act with a conscious, fully formed objective of accomplishing a certain specific result.

There can be no crime of assault with intent to

commit murder, or assault with intent to do great bodily harm less than murder, under our law where, in the case of assault with intent to murder, there is no intent to murder, and the burden rests upon the prosecution to show beyond a reasonable doubt that the defendant at the time of doing the alleged act had that wrongful intent.

The intent with which a person does an act is known by the way in which he expresses it to others or indicates it by his conduct. The intent with which a person does an act can sometimes be determined from the manner in which it is done, the method used an [sic] all other facts and circumstances, but only if that intent is established by the evidence.

If you find that the defendant, for any reason whatsoever, did not consciously and knowingly act with the intent to murder, the crime cannot have been committed and you must find the defendant not guilty of the crime of assault with intent to murder.

On the other hand if you find—not on the other hand, but also charging you. If you find that the defendant, for any reason whatsoever, did not consciously and knowingly act with the intent to do great bodily harm less than murder to the complainant, the crime cannot have been committed and you must find the defendant not guilty of the crime of assault with intent to do great bodily harm less than murder.

Again, ladies and gentlemen, you must consider specific intent as you consider the first two charges that I have charged you with reference to assault with intent to murder and assault with intent to do great bodily harm less than the crime of murder.

If from all of the evidence you have a reasonable doubt as to whether or not the defendant knowingly and consciously acted with the intent to murder or to do great bodily harm less than murder, then you must find the defendant not guilty of the crime of assault with intent to com-

mit murder or assault with intent to do great bodily harm less than murder.

The defendant was sentenced to a term of from twenty to forty years in prison.

The Court of Appeals affirmed. *People v Johnson*, 116 Mich App 452; 323 NW2d 439 (1982). We then granted leave to appeal.[6] *People v Johnson*, 419 Mich 879 (1984).

### III

On January 1, 1982, defendant Ronald G. Taylor fired a large number of shots at the home of a Romulus family named Webb. A daughter was killed, and the mother and two other children were wounded. The father and a fourth child were present at the time of the attack, but were not wounded. The defendant was charged with first-degree murder, five counts of assault with intent to murder, and one count of possession of a firearm during the commission of the murder and assaults. MCL 750.316, 750.83, 750.227b; MSA 28.548, 28.278, 28.424(2).

A bench trial took place in July of 1982. At the conclusion of trial, the defendant was found guilty of second-degree murder and was otherwise convicted as charged. MCL 750.317; MSA 28.549. The trial court explained:

> *The Court:* The Court would first like to acknowledge its gratitude to the attorneys for their patience which has been excellent and thorough and in the best interests or in the best traditions of the Prosecution and Defense bar. You have both represented your respective interests in this trial extremely well.

---

[6] This case too had been held in abeyance for *Dykhouse. People v Johnson,* unreported order entered March 21, 1983.

Based upon all the evidence in the case, the Court makes the finding, the following findings of fact and conclusions of law beyond a reasonable doubt.

The events upon which this, the criminal charges in this case are based occurred during the evening of January 1, 1982, in Wayne County, Michigan.

Throughout the evening of January 1, 1982, although Defendant had consumed an unknown amount of alcoholic beverages, had been struck and kicked in a melee with Robert Webb, Earl Bryant, and Garnet Bryant and was angry, nevertheless Defendant was possessed of the requisite mental ability to form the state of mind and specific intents to which the Court will have reference in these findings of facts and conclusions of law.

After being involved in the melee at the Webb home with the Bryant brothers and Mr. Webb, the Defendant left the home, obtained a rifle or rifles along with ammunition and returned to the vicinity of the Webb home.

While in the Webb home previous to his leaving it, the Defendant had become aware that the home, and specifically the living room, was occupied by Mr. and Mrs. Webb and the Webb children, Monica, Erica, Robin Gail, and Robert, Jr., and that when he returned to the home, the Defendant was similarly aware of its occupants.

Upon his returning to the vicinity of the Webb home and locating himself approximately 70 yards from the front of the home, the Defendant fired a fusilade [*sic*] of .30 caliber rifle shots at the front of the Webb home at least seven of which shots entered the home.

When he fired the fusilade of shots into the front of the Webb home, the Defendant knew he was creating an extremely high degree of risk of death or serious bodily harm to the occupants of the home and he had the specific intent to create such a risk.

The Defendant fired the fusilade of shots into

the front of the Webb home with malice, in that he intentionally, knowingly, willfully, and wantonly committed acts, the natural tendency of which was to cause death or serious bodily harm with knowing and intentional disregard of the consequences of such acts.

During the fusilade of shots fired by Defendant into the front of the Webb home, Monica Webb was killed by one of the shots after being struck in the head by it, and Erica Webb and Robert Webb were wounded by the shots.

Subsequent to firing the fusilade of shots into the front of the Webb home, the Defendant positioned himself with a view of the rear of the Webb home on the street in the rear of the Webb home, Delano Street, and fired a fusilade of .30-30 caliber shots at the rear of the home, at least two of which entered the home. At this time the home was unoccupied.

In firing the fusilade of shots at the rear of the Webb home, the Defendant evidenced the same intent and state of mind as the Court finds he was possessed of when he fired the fusilade of .30 caliber shots in the front of the home.

Based upon the foregoing findings and conclusions which the Court has made beyond a reasonable doubt, the Court makes the following findings of guilt: Count I, guilty of Murder in the Second Degree; Count II, guilty of Assault With Intent to Murder; Count III, guilty of Assault With Intent to Murder; Count IV, guilty of Assault With Intent to Murder; Count V, guilty of Assault With Intent to Murder; Count VI, guilty of Assault With Intent to Murder; and Count VII, guilty of the Possession of a Firearm in the Commission of a Felony.

The specific intent in the findings of intent is the intent as expressed in the findings of fact and conclusions of law, the intent, that is, to create an extremely high degree of risk of death or serious bodily harm to the occupants.

Do you have any questions, gentlemen?

*Mr. Kenny* [*Assistant Prosecuting Attorney*]: Your Honor, just a couple of questions with regard

to the factfinding. You did mention that you found as a matter of fact and a matter of law that the, as a matter of fact that Erica Webb and Robert Webb, Jr., were, in fact, wounded. I believe the testimony in the trial from Mrs. Eva Webb was also to the effect that she was wounded.

*The Court:* I'm sorry, yes, that is correct.

*Mr. Kenny:* I assume the Court would incorporate that in its findings.

*The Court:* It was an oversight on my part. That is correct.

*Mr. Kenny:* And, with regards to Complainants Gail Webb and Robert Webb that they were, Gail Webb was inside the home at the time the first fusilade of shots were [*sic*] fired and that Mr. Robert Webb, Sr., was on the front walk, on the front.

*The Court:* All—the entire Webb family, that is to say Mrs. Webb, Eva Webb, the four Webb children were inside the home and Mr. Webb, Robert Webb, Sr., was on the sidewalk immediately outside the home when this first shot was fired and thereupon dove for cover between parked cars on the driveway adjacent to the Webb home and I make those findings beyond a reasonable doubt.

The defendant was sentenced to a term of from twenty to forty years in prison for murder, five terms of from fifteen to forty years in prison for assault, and two years in prison for felony-firearm.

The Court of Appeals affirmed. *People v Ronald Taylor,* 133 Mich App 762; 350 NW2d 318 (1984). The same day, the Court of Appeals certified a conflict[7] with *People v Davis,* 126 Mich App 66; 337 NW2d 315 (1983), a case discussing adequacy of findings at a bench trial. This Court granted leave to appeal. *People v Ronald Taylor,* 419 Mich 879 (1984).

---

[7] Administrative Order No. 1984-2, 418 Mich lxxxii (1984).

## IV

We explained in *People v Aaron,* 409 Mich 672, 722; 299 NW2d 304 (1980), that there are several intents which can support a murder conviction. There can be an intent to kill, an intent to inflict great bodily harm, or a wanton and wilful disregard of the likelihood that the natural tendency of the actor's behavior is to cause death or great bodily harm.

However, the issue before us concerns assault with intent to murder. The prosecution correctly concedes in all three of these cases that, in order to find a defendant guilty of this crime, it is necessary to find that there was an actual intent to kill. *Maher v People,* 10 Mich 212, 217-218 (1862), *Roberts v People,* 19 Mich 401, 415-416 (1870).

> This case, so far as regards the intention to kill, is not identical with that of murder. To find the defendant guilty of the whole charge, it is true, the jury must find the intent to kill under circumstances which would have made the killing murder—and it is not denied that had death ensued in the present case, it would have been murder. But the converse of the proposition does not necessarily follow; that, because the killing would have been murder, therefore there must have been an intention to kill. Murder may be and often is committed without any specific or actual intention to kill. See instances stated in 1 Bish Cr Law, §§ 412 and 667. And no such specific intent is therefore necessary to be found. This difference was recognized in *Maher v People,* above cited.
>
> By saying, however, that the specific intent to murder, or (which under the circumstances of the case, would be the same thing), the intent to kill must be proved, we do not intend to say it must be proved by direct, positive, or independent evidence;

but as very properly remarked by my brother
CAMPBELL in *People v Scott,* 6 Mich [287 (1859)],
the jury "may draw the inference, as they draw all
other inferences, from any facts in evidence which
to their minds fairly prove its existence." And in
considering the question they may, and should
take into consideration the nature of the defen-
dant's acts constituting the assault; the temper or
disposition of mind with which they were appar-
ently performed, whether the instrument and
means used were naturally adapted to produce
death, his conduct and declarations prior to, at the
time, and after the assault, and all other circum-
stances calculated to throw light upon the inten-
tion with which the assault was made.

As we explained in this passage from *Roberts,* one
may, of course, draw reasonable inferences to as-
sist in making the finding of an actual intention to
kill.

## V

Guy Taylor and Ronald Taylor were convicted
following bench trials. In neither case did the trial
court find that the defendant intended to kill.
Likewise, the jury that convicted Johnson was not
instructed that it needed to find an intent to kill.
In *Guy Taylor* and *Ronald Taylor,* the prosecution
argues that the trial judge did, in effect, find an
actual intent to kill. Likewise, the prosecution
argues in *Johnson* that the jury instructions were
such that a guilty verdict was necessarily
grounded on a finding of an actual intent to kill.
We disagree, since we can locate in neither the
findings nor the instructions the requisite lan-
guage concerning an intent to kill. In none of
these cases can the error be said to be harmless,

since each arose under circumstances equally suggestive of a lesser intent.

In *Johnson* and *Ronald Taylor,* we remand the case to the trial court for entry of a judgment of guilty of assault with intent to do great bodily harm less than murder, and for resentencing. MCL 750.84; MSA 28.279. If, however, the prosecuting attorney is persuaded that the ends of justice would be better served, on notification of the trial court before resentencing, the trial court shall vacate the judgment of conviction and grant a new trial on the charge that the defendant committed the crime of assault with intent to murder.

Because the findings in *Guy Taylor* are unclear as to exactly what was intended by the defendant, we remand that case to the trial court for clarification of its findings of fact. Within twenty-one days of the date this opinion is filed, the Recorder's Court of the City of Detroit shall file with the clerk of this Court supplemental findings of fact stating whether Guy Taylor had an actual intent to kill, and the basis for that finding. If the trial court finds that Guy Taylor was without an actual intent to kill, it shall find what intent he did possess, and shall state the basis for that finding.

As to defendants' remaining issues, we are no longer persuaded that those questions should be reviewed by this Court. We retain jurisdiction in *Guy Taylor.* We do not retain jurisdiction in *Johnson* or *Ronald Taylor.*

WILLIAMS, C.J., and LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred.

RILEY, J., concurred in *Ronald Taylor* only, and took no part in the decision of *Guy Taylor* or *Johnson.*