*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BERNARD DOUGLAS RITCHEY,

        Defendant-Appellant.

UNPUBLISHED
January 21, 2020

No. 345735
Macomb Circuit Court
LC No. 2018-000639-FC

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

Defendant was convicted following a jury trial of assault with intent to commit murder (AWIM), MCL 750.83, and sentenced to 20 to 50 years as a third-offense habitual offender, MCL 769.11. Defendant now appeals as of right. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of a January 12, 2018 incident during which the victim, John Wersackas, was beaten and stabbed outside of his automobile repair shop. Wersackas testified that he had been in a sexual relationship with Bianca Morelli "[o]n and off [for] roughly two and a half years." Defendant had also dated Morelli at some point. According to Wersackas, his relationship with Morelli occurred while defendant was in prison but was "pretty much over" when defendant was released. Wersackas testified that his relationship with Morelli had definitely ended before January 2018.

On January 11, 2018, defendant visited Wersackas at his repair shop and asked to borrow money to move to Arkansas. Wersackas agreed to buy defendant a bus ticket and indicated that he would meet defendant at the bus station the following day to pay for the ticket. Wersackas had met defendant in person approximately three times previously and had never had a conflict with him.

The next day, at approximately 6:30 p.m., Wersackas walked out of his shop toward two RVs parked outside the shop. Wersackas unlocked one of the RVs, looked down, and saw fresh

footprints in the snow. As Wersackas turned to follow the footprints, he "got jumped" from behind and was thrown to the ground and kicked in the forehead. He began to fight back and eventually managed to get back on his feet. Wersackas testified that as he recognized defendant as his attacker during the course of this struggle. Wersackas then felt a "sharp pain" in his side and realized that defendant had stabbed him. Wersackas had his arms stretched out in front of him and was holding onto defendant. Another man stood about "a foot and a half" behind defendant. Wersackas did not see a weapon. He believed that defendant, not defendant's accomplice, stabbed him because the accomplice was too far away to reach him.

Wersackas ran into his shop and told his daughter to call the police. Wersackas grabbed a hammer and went back outside to confront defendant, but he did not find him. Wersackas was taken to the hospital. He suffered a 4-centimeter laceration on the left side of his torso, a 2-centimeter laceration on his forehead, small lacerations in his mouth, two fractured ribs on his left side, and bruising on his lung.

Wersackas's daughter testified that she spoke to the police officers who arrived at the shop that night and that she showed the police defendant's profile picture on defendant's Facebook page. Then she found a public post on defendant's page from the previous day, which she also showed to the police. This post stated as follows:

> This will never be again. It is sad but some people can't stay faithful to one man forever and always love of your life. The only man you ever need. Biggest lies I ever head. So I'm a—do like the old days. Let the fun begin. [ending with sunglasses emoji and a smiley face.]

Sandra Reynolds, who had known defendant for approximately 10 years, testified that defendant had messaged her at around noon on January 12, 2018, asking to stay at her apartment that night. Defendant told Reynolds that he "was about to do something stupid." Amir Hureyn testified that he drove defendant to Wersackas's repair shop one evening around this time, although he did not recall the exact date. Hureyn believed that defendant was picking up a bus ticket. Hureyn parked, and defendant got out of the vehicle. Hureyn stayed in the vehicle and did not see where defendant went. According to Hureyn, defendant was gone for approximately 10 minutes. Hureyn testified that defendant's hand was bleeding when he returned and that defendant "said he was playing around, cut himself." Hureyn testified that nobody else was with defendant and that they left the area.

According to Reynolds, defendant was dropped off at her apartment around 9:00 p.m. His demeanor was normal, but he had a deep cut on his hand and asked for a bandage. Defendant was arrested at Reynolds's apartment later that night, where officers also seized sweatpants with blood on them. Subsequent DNA analysis revealed that the blood stain on the sweatpants came from a single individual and that Wersackas was the likely source. Defendant was excluded as a possible source of the blood. The DNA analysis also revealed that defendant was likely one of three contributors to DNA found on the waistband of the sweatpants, indicating that he had likely worn the sweatpants.

As previously noted, the jury convicted defendant of AWIM. This appeal followed.

## II. DIRECTED VERDICT

We first address defendant's argument that the trial court erred by denying defendant's motion for a directed verdict. Defendant preserved this issue for appellate review by moving the trial court, at the close of the prosecution's proofs, for a directed verdict on the ground that the prosecution had not presented sufficient evidence to support the AWIM charge. *People v Aldridge*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

When reviewing a trial court's decision on a motion for a directed verdict, this Court reviews the record de novo to determine whether the evidence presented by the prosecutor, viewed in the light most favorable to the prosecutor, could persuade a rational trier of fact that the essential elements of the crime charged were proved beyond a reasonable doubt. [*Id*.]

To prove that defendant committed AWIM, the prosecution was required establish the following elements beyond a reasonable doubt: "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (quotation marks and citations omitted). AWIM is a specific intent crime, requiring that defendant harbored "a specific intent to kill." *Id*. at 147-149, citing *People v Taylor*, 422 Mich 554, 567; 375 NW2d 1 (1985). An actual intent to kill may be based on reasonable inferences supported by the evidence. *Taylor*, 422 Mich at 568.

In this case, defendant argues there was insufficient evidence of the requisite intent for AWIM because, he claims, the evidence reflected that defendant and Wersackas were mutually engaged in the fight and that defendant acted in response to Wersackas hitting him with a hammer. Defendant supports his argument by referring to the trial testimony of officer Allen Miculec. Miculec testified that when he arrived at the scene, Wersackas told him that he swung a hammer at defendant and thought he hit defendant. However, contrary to defendant's assumption on which his appellate argument is premised, Miculec did not testify that testimony Wersackas claimed to have hit defendant with the hammer in the midst of the struggle. Rather, Miculec testified that Wersackas told him that following getting stabbed, Wersackas retrieved the hammer. Hence, Miculec's testimony does not create the inherent conflict on which defendant premises his argument. Moreover, even if we were to accept defendant's interpretation of the evidence, "the prosecution . . . is not obligated to disprove every reasonable theory consistent with innocence to discharge its responsibility; it need only convince a jury in the face of whatever contradictory evidence the defendant may provide." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000) (quotation marks and citation omitted). The prosecution is merely "bound to prove the elements of the crime beyond a reasonable doubt." *Id*. Accordingly, the proper question to address on appellate review is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded that defendant assaulted Wersackas with an actual intent to kill him. *Aldridge*, 246 Mich App at 122; *Brown*, 267 Mich App at 147-149.

Applying this standard, we conclude that the trial court did not err. Wersackas testified that he was "jumped" by surprise and grabbed from behind, that he resisted the attack, and that he was stabbed during the ensuing struggle. Although Wersackas indicated that another individual was present, he believed that defendant must have stabbed him because defendant was

-3-

closer and the other individual was too far away to reach Wersackas. There was evidence that Wersackas's injuries included lacerations to his torso, forehead, and mouth, as well as two fractured ribs and bruising on his lung. The evidence also supported the conclusion that Wersackas's blood was on sweatpants that had been worn by defendant. Additionally, defendant's Facebook post from the day before the stabbing, as well as his statements to Reynolds on the day of the stabbing that he needed a place to stay that night and was about to "do something stupid," could be understood to reflect that defendant was planning the attack out of anger over Morelli's relationship with Wersackas.

Based on all of this evidence, a rational trier of fact could reasonably conclude that defendant was hiding with a knife outside Wersackas's repair shop, waiting for Wersackas so he could attack and kill Wersackas, and that defendant stabbed Wersackas after ambushing him. Accordingly, there was sufficient evidence from which a rational trier of fact could reasonably infer that defendant possessed an actual intent to kill. *Taylor*, 422 Mich at 568. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008). "Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime." *Nowack*, 462 Mich at 400 (quotation marks and citation omitted). The trial court correctly reasoned in denying defendant's motion for a directed verdict that defendant's arguments "[went] to weight, not whether the prosecution [had] entered evidence." Therefore, the trial court did not err in denying defendant's motion for a directed verdict.

## III. "OTHER ACTS" EVIDENCE

Next, defendant argues that he was denied a fair trial because defense counsel informed the jury that defendant had previously been incarcerated, after which defendant's previous incarceration was also referenced during Wersackas's testimony.

During opening statements, defense counsel attempted to portray Wersackas as someone who was not credible and who had a reason to falsely accuse defendant in order to "get rid" of defendant so Wersackas could resume a relationship with Morelli. In doing so, defense counsel referenced defendant's prior incarceration as follows:

Here is the story.

I'll tell you this because I don't want to hid [sic] anything from you. [Defendant] is not the cleanest cut guy in the world, nor is Bianca. But they had a love relationship and a love child. Four year old daughter. [Defendant] got into a little trouble and had to go away to be a guest of the State of Michigan for a short period of time. While he was doing that time, Bianca got a job at the shop and soon became [Wersackas's] lover. He is 52. She is 24. He provided things for her, provided a job for her, provided money, took her places. He wanted this man out of the picture because when he came back Bianca said to [Wersackas] I am going back with the father of my daughter, going back to the man I love.

-4-

> Well, for whatever reason or another that didn't really work out too well. She ended up wanting to go back to [Wersackas].

Defense counsel further stated that there was "[n]o argument" that the fight occurred between Wersackas and defendant but that "[w]hat we're denying is that there was any credible evidence to show an intent to commit murder."

Subsequently, without objection from defense counsel, Wersackas testified that his relationship with Morelli occurred during the period of time that defendant was in prison and that the relationship ended when defendant was released.

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Thorpe*, 504 Mich 230, 252; 934 NW2d 693 (2019), citing MRE 103(a)(1). Defense counsel did not object to Wersackas's testimony about defendant's prior incarceration, presumably because he had already referred to this fact as part of explaining his theory of the case during his opening statement. Therefore, this issue is not preserved for appeal. *Id*.

This Court reviews unpreserved issues for plain error. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. at 763. The third prong "generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id*. It is defendant's burden to demonstrate prejudice. *Id*.

In this case, defendant has failed to meet his burden of establishing that he was prejudiced by the reference to his prior incarceration. Further, a party cannot create an error in the trial court and then rely on that error as a basis for reversal because doing so would run afoul of the well-established principle that a party may not harbor error as an appellate parachute. *People v Szalma*, 487 Mich 708, 710, 726; 790 NW2d 662 (2010). Regardless, the nature of defendant's prior conviction was never disclosed, and the references to his previous incarceration were used only to show the time frame during which defendant's former girlfriend, Morelli, engaged in a sexual relationship with Wersackas. The fact that defendant had previously been incarcerated was not argued as a basis for concluding that defendant should be found guilty of the instant offense. Defendant has thus failed to demonstrate the requisite prejudice because he has not shown that any error related to the references to his prior incarceration had an effect on the outcome of the proceedings, especially in light of the other overwhelming evidence that defendant committed the charged offense. Accordingly, defendant has not satisfied the test for demonstrating plain error requiring reversal. *Carines*, 460 Mich at 763.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Alternatively, defendant argues that defense counsel was constitutionally ineffective for introducing the fact of defendant's prior incarceration into the trial, failing to object to the subsequent references to defendant's prior incarceration, and failing to seek a curative jury instruction.

Because defendant did not move for an evidentiary hearing on his ineffective assistance of counsel claim, our review is limited to mistakes apparent from the existing record. *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000).

"[A] failure to satisfy the plain-error test will not, without more, foreclose a defendant's claim of ineffective assistance of trial counsel. This is true even when the subject of each claim is the same." *People v Randolph*, 502 Mich 1, 5; 917 NW2d 249 (2018). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). "Generally, a trial court's findings of fact, if any, are reviewed for clear error, and questions of law are reviewed de novo." *Id*. at 188.

"Under *Strickland v Washington*, [466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984),] establishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Randolph*, 502 Mich at 9. "Prejudice means 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Id*., quoting *Strickland*, 466 US at 694.

Defendant in this case asserts in a conclusory manner, without any meaningful explanation, that defense counsel's actions prejudiced him. However, considering the limited purpose for which defendant's prior incarceration was referenced at trial, the fact that the nature of the underlying conviction was never disclosed, the fact that the prior conviction was not used to support an argument that defendant was more likely to have committed the charged offense due to his apparent history of criminal activity, and the abundance of other evidence demonstrating defendant's guilt, defendant has failed to show on appeal that any reasonable probability exists that the outcome of his trial would have been different but for the challenged actions of defense counsel. *Randolph*, 502 Mich at 9. Therefore, defendant has not established that he was denied the effective assistance of counsel. *Strickland*, 466 US at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."). Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto