*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAWAUN LEE GREEN,

        Defendant-Appellant.

UNPUBLISHED
May 11, 2026
2:30 PM

No. 374749
Wayne Circuit Court
LC No. 20-002997-01-FC

Before: BORRELLO, P.J., and M. J. KELLY and ACKERMAN, JJ.

PER CURIAM.

Jawaun Lee Green, (hereinafter defendant), appeals as of right his jury-trial convictions of assault with intent to commit murder (AWIM), MCL 750.83; felonious assault, MCL 750.82; and two counts of possession of a firearm during commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 14 to 30 years' imprisonment for his AWIM conviction, two to four years' imprisonment for his felonious assault conviction, and two years' imprisonment for each of his felony-firearm convictions. On appeal, defendant argues (1) the trial court abused its discretion when it admitted a video recorded about six months after the offense depicting defendant threatening to kill the victim, (2) the evidence was insufficient to prove defendant had the specific intent to commit murder, (3) the trial court erred when it refused to remove references to gang affiliation in defendant's presentence investigation report (PSIR), and (4) the trial court erred in assessing Offense Variable (OV) 3 at 25 points. For the reasons set forth in this opinion, we affirm defendant's convictions and sentences but remand to the trial court solely with instructions to properly address defendant's challenge to the accuracy of references to gang affiliation in defendant's PSIR.

## I. BACKGROUND

Defendant and the victim, J. Johnson, were concurrently engaged in romantic relationships with T. Kershaw. While defendant was cognizant of Kershaw's involvement with Johnson, he did not comprehend the full extent of their relationship. Conversely, Johnson was unaware of Kershaw's relationship with defendant.

On the evening of the incident, Kershaw was scheduled to work but instead feigned illness to spend time with defendant. She misrepresented her availability to Johnson, claiming work obligations. While Kershaw and defendant were en route to her home, Johnson attempted to deliver food to her at work, only to learn of her absence. He proceeded to Kershaw's residence, again finding no one present. To prevent a confrontation between the two men, Kershaw coordinated a meeting with Johnson at a nearby store, intending to first drop off defendant at her home.

To avoid Johnson while transporting defendant, Kershaw utilized a side street. Nevertheless, Johnson, traveling in the opposite direction, recognized her vehicle, executed a U-turn, and pursued her to a stop sign. At that location, defendant exited the passenger side, verbally acknowledged Johnson's pursuit, and discharged a firearm—purportedly as a warning—into the windshield of Johnson's vehicle. The projectile struck Johnson in the right thoracic region, necessitating an eight-day hospitalization. Bullet fragments remained embedded in Johnson's lung and adjacent to his spine, resulting in persistent ambulatory and respiratory impairments.

At trial, defendant asserted a theory of self-defense, contending that he discharged the firearm under the belief that Johnson intended to strike him with his vehicle. Defendant testified that his intent was merely to exhibit his possession of a firearm, not to inflict harm or cause Johnson's death. Johnson, in contrast, denied making any threatening gestures or statements, and expressly denied any attempt to use his vehicle as a weapon against defendant.

Several months post-incident, while released on bond, defendant created a Facebook Live video in which he appeared to threaten Johnson. During the video, the defendant stated, "He gon' die again," while miming a firearm gesture to his head. In response to an off-screen inquiry regarding the subject of his remarks, defendant, rapping along with background music, indicated his intent to kill Johnson upon resolution of his case, employing explicit and threatening language. Specifically, defendant stated: "That [N-word] I'm gonna kill, when I'm off mothaf****n' this case, I'ma put that b***h to his f****n' face." The video concluded with defendant instructing, "Tell him screen shot this." The trial court granted the prosecution's motion in limine to admit the video, concluding its probative value outweighed any prejudicial effect.

Following a jury trial, defendant was convicted on all charges. At sentencing, defendant sought to strike all references to alleged gang affiliation from the Presentence Investigation Report (PSIR), arguing that he had no such associations and that any contrary inference was based on speculative interpretation of his tattoos by the probation officer. The court responded that it was not the appropriate factfinder for this issue, but indicated on the record that the defendant denied any gang ties. Additionally, defendant contended that OV 3 should be scored at 10 points, asserting the absence of serious permanent bodily injury to Johnson. The court disagreed:

> I do think the record, my notes indicate that the fragments of the bullet—uh, well, first of all, the record was quite clear, he was shot in the right side of his chest.
>
> Uh, the record also establishes that the victim has a fragment of bullet . . . in his lung and spine.

The victim testified that it was hard to walk, and [he] has, uh, breathing difficulty.

I do think, by a preponderance of the evidence, the record does establish that a gun shot wound to the right chest, uh, is a life threatening injury.

I think the record . . . also establishes by a preponderance of the evidence that, uh, the bullet fragment, in the lung and spine, which is [sic] makes it hard to walk, and has—causes difficult breathing, not to mention the injury to the underlying tissue, uh, would meet the definition of a permanent incapacitating injury.

Accordingly, the trial court increased its OV 3 assessment from 10 to 25 points. This, along with other adjustments, elevated the minimum sentencing guidelines from 108-180 months' imprisonment to 126-210 months. Defendant received a sentence within this revised range and subsequently appealed.

## II. ANALYSIS

## A. ADMISSION OF VIDEO

Defendant first argues the trial court abused its discretion when it granted the prosecution's motion in limine and admitted the Facebook live video because it was filmed approximately 6 months after the shooting and its probative value was thus substantially outweighed by the danger of unfair prejudice under MRE 403.

"A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Thorpe*, 504 Mich 230, 251; 934 NW2d 693 (2019). An abuse of discretion occurs when "that decision falls outside the range of principled outcomes." *Id*. at 252 (quotation marks and citation omitted). When a decision on an evidentiary question is close, it is generally not an abuse of discretion. *Id*.

On appeal, defendant contends that the video was inadmissible pursuant to MRE 403 because the video was recorded several months after the shooting and was therefore unfairly prejudicial and had no probative value regarding defendant's specific intent at the time of the shooting. Under MRE 403, the trial court may exclude relevant evidence if "its probative value is substantially outweighed" by the danger of "unfair prejudice."[1] Evidence is relevant if it has "any tendency" to make a fact that is "of consequence" to determining the action more or less probable than it would be without the evidence. MRE 401.[2]

---

[1] MRE 403 was recently amended, effective January 1, 2024, although the changes appear to be stylistic without any change in substantive meaning.

[2] MRE 401 was also recently amended, effective January 1, 2024, with changes that appear to be merely stylistic.

To resolve the question whether evidence is inadmissible under MRE 403, we must first determine whether the evidence is relevant under MRE 401. *People v Mills*, 450 Mich 61, 66; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995). If it is relevant, then we must determine whether the probative value of the evidence is substantially outweighed by a danger of unfair prejudice such that it should have been excluded under MRE 403. *Id*.

Determining whether evidence is relevant under MRE 401 involves two questions:

First, we must determine the "materiality" of the evidence. In other words, we must determine whether the evidence was of consequence to the determination of the action. Second, we must determine the "probative force" of the evidence, or rather, whether the evidence makes a fact of consequence more or less probable than it would be without the evidence. [*Id*. at 66-67.]

For evidence to be "material," the evidence must be related to proving a fact that is truly at issue in the action. *Id*. at 67. Although "materiality does not mean that the evidence *must* be directed at an element of a crime or an applicable defense," *id*. (emphasis added), it is undisputedly true that "*all* elements of a criminal offense are 'in issue' when a defendant enters a plea of not guilty," *id*. at 69. "The elements of assault with intent to commit murder are '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.' " *People v Erickson*, 288 Mich App 192, 195-196; 793 NW2d 120 (2010), quoting *People v Brown*, 267 Mich App 141, 147-148; 703 NW2d 230 (2005). The specific intent to kill must be proven to sustain an AWIM conviction. *Brown*, 267 Mich App at 148.

Here, defendant's intent constituted a central issue at trial. The prosecution contended that the video evidence was admissible to rebut a potential assertion of self-defense. Claims of self-defense are directly relevant to a defendant's intent and state of mind. As articulated by our Supreme Court, "the affirmative defense of self-defense justifies otherwise punishable criminal conduct, usually the killing of another person, if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself." *People v Dupree*, 486 Mich 693, 707; 788 NW2d 399 (2010) (quotation marks and citation omitted). A finding that a defendant acted in justifiable self-defense necessarily entails a finding that the defendant acted intentionally, albeit under circumstances deemed legally justified. *Id*. At trial, the prosecution further asserted that the video evidence demonstrated defendant's requisite initial intent to kill the victim, as evidenced by defendant's statement in the video that he would kill the victim "again." The prosecution also argued that the video undermined any claim of self-defense by defendant.

The trier of fact may properly infer a defendant's intent from circumstantial evidence, including the defendant's statements and the way the offense was perpetrated. *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001). Our Supreme Court has clarified that the jury is entitled to draw reasonable inferences from all facts adduced at trial in determining whether a defendant possessed the specific intent to kill necessary to sustain a conviction for AWIM. *People v Taylor*, 422 Mich 554, 567-568; 375 NW2d 1 (1985). The Court further observed that postassault declarations are pertinent to this inquiry: "[I]n considering the question they may, and should take into consideration . . . his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was

-4-

made." *Id*. at 568 (quotation marks and citation omitted). Thus, under *Taylor*, postassault statements by the defendant are admissible insofar as they elucidate the defendant's intent at the time of the assault. *Id*.

Defendant's statements in the video, specifically the assertion that he would kill the victim "again," support an inference that defendant harbored the intent to kill at the time of the initial shooting—despite the video having been recorded months after the incident. As the evidence bears directly on the issue of defendant's specific intent regarding the AWIM charge, the video evidence qualifies as "material" within the meaning of *Mills*, 450 Mich at 67, 69.

The concept of "probative force" is defined as the tendency of evidence to make the existence of any fact of consequence more or less probable than it would be without such evidence. *Id*. at 68 (quotation marks omitted). In this case, defendant's statements and demeanor in the video—characterized by a cavalier attitude toward threats of violence—render it more probable that defendant possessed the specific intent to kill at the time of the shooting, rather than merely an intent to create a high risk of serious harm or to act in self-defense based on a reasonable apprehension of bodily harm. Accordingly, the video possessed sufficient probative force, as "any" tendency to affect the probability of a consequential fact satisfies the requirements of MRE 401. *Id*.; *Taylor*, 422 Mich at 567-568.

Having established the relevance of the evidence, the subsequent inquiry is whether exclusion under MRE 403 is warranted. Defendant contends that the prejudicial effect of the video substantially outweighs its probative value. However, it is axiomatic that all evidence adduced by the parties is prejudicial to some degree; mere prejudice, in and of itself, does not render evidence inadmissible. *Mills*, 450 Mich at 75. Thus:

> "Unfair prejudice" does not mean "damaging." Any relevant testimony will be damaging to some extent. We believe that the notion of "unfair prejudice" encompasses two concepts. First, the idea of prejudice denotes a situation in which there exists a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury. In other words, where a probability exists that evidence which is minimally damaging in logic will be weighed by the jurors substantially out of proportion to its logically damaging effect, a situation arises in which the danger of "prejudice" exists. Second, the idea of unfairness embodies the further proposition that it would be inequitable to allow the proponent of the evidence to use it. Where a substantial danger of prejudice exists from the admission of particular evidence, unfairness will usually, but not invariably, exist. Unfairness might not exist where, for instance, the critical evidence supporting a party's position on a key issue raises the danger of prejudice within the meaning of MRE 403 as we have defined this term but the proponent of this evidence has no less prejudicial means by which the substance of this evidence can be admitted. [*Id*. at 75-76 (citations and some quotation marks omitted).]

In the present matter, there is no aspect of the video which would suggest a risk that the jury would have accorded this evidence weight disproportionate to its probative value, nor does the record support any inference that permitting the prosecution to introduce the video was inequitable. *Id*. Our review finds no indicia of unfair prejudice arising from the video's admission.

-5-

As articulated in *People v Pickens*, 446 Mich 298, 337; 521 NW2d 797 (1994), "unfair prejudice" denotes an undue tendency for the proffered evidence to adversely impact the opposing party's position by introducing factors extraneous to the substantive merits of the case, such as eliciting the jury's bias, sympathy, anger, or shock." Defendant has not satisfied the burden, on appeal, of establishing that the trial court's decision to admit the video constituted an abuse of discretion.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant next contends the evidence was insufficient for the jury to find he had the requisite intent to kill Johnson necessary to support his AWIM conviction.

On a claim that the evidence was insufficient to support the conviction, we review the record evidence "in the light most favorable to the prosecution, and consider[] whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt." *People v Oros*, 502 Mich 229, 239; 917 NW2d 559 (2018) (quotation marks and citation omitted). This Court must "draw all reasonable inferences and make credibility choices in support of the jury verdict." *Id*. (quotation marks and citation omitted).

As previously stated, the "elements of assault with intent to commit murder are '(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder.' " *Erickson*, 288 Mich App at 195-196, quoting *Brown*, 267 Mich App at 147-148. The specific intent to kill must be proven to sustain an AWIM conviction. *Brown*, 267 Mich App at 148.

Here, the prosecution presented not only the aforementioned video evidence conclusively establishing defendant's intent to kill, but also uncontroverted proof that defendant discharged a firearm, striking Johnson. Under Michigan law, the intentional use of a deadly weapon, such as a firearm, is sufficient to support an inference of intent to kill. See *People v Everett*, 318 Mich App 511, 531 n 10; 899 NW2d 94 (2017) ("Intent to kill may be inferred from all the facts in evidence, including use of a deadly weapon, taking aim at a victim, injury to the victim, evidence of flight and attempts to hide evidence."). Additionally, it is well established that even minimal circumstantial evidence is adequate to establish intent, given the inherent challenges in ascertaining a defendant's state of mind. *People v Erickson*, 288 Mich App 192, 197; 793 NW2d 120 (2010). When the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that defendant possessed the requisite intent to kill Johnson, as demonstrated by his deliberate act of aiming and firing a weapon into the vehicle, resulting in Johnson being struck in the chest. Accordingly, defendant has failed to meet his burden of demonstrating that the evidence was insufficient to sustain his conviction for AWIM. *Oros*, 502 Mich at 239.

## C. ACCURACY OF THE PSIR

Next, defendant argues that the trial court erred by refusing to strike references to defendant's alleged gang affiliation in his PSIR. The prosecution agrees that the trial court erred by declining to hold a hearing or make any factual finding when defense counsel challenged the inclusion of information in the PSIR indicating that defendant had gang affiliations.

If a defendant challenges information in the PSIR, the sentencing court is required to allow the parties to be heard on the challenge and to "make a finding with respect to the challenge or determine that a finding is unnecessary because it will not take the challenged information into account in sentencing." MCR 6.425(D)(2)(a); see also *People v Maben*, 313 Mich App 545, 553; 884 NW2d 314 (2015). "[U]pon assertion of a challenge to the factual accuracy of information, a court has a duty to resolve the challenge." *People v Waclawski*, 286 Mich App 634, 689; 780 NW2d 321 (2009). "Once a defendant effectively challenges a factual assertion, the prosecutor has the burden to prove the fact by a preponderance of the evidence." *Id*. at 690. Furthermore, "[w]hen a sentencing court disregards information challenged as inaccurate, the court effectively determines that the information is irrelevant and the defendant is entitled to have the information stricken from the report." *Id*. Because the trial court did not uphold its duty to resolve defendant's challenge, we remand this matter for the court to appropriately resolve the issue.

## D. OV SCORING

Finally, defendant argues the trial court clearly erred when it assigned 25 points to OV 3 because Johnson's injuries were not life-threatening and did not permanently incapacitate him.

Our standard of review is well-settled:

Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [*People v Lampe*, 327 Mich App 104, 111; 933 NW2d 314 (2019) (quotation marks and citations omitted).]

OV 3 is assessed according to the "physical injury to a victim." MCL 777.33(1). "In scoring OV 3, the focus is not on the defendant's actions; rather, OV 3 assesses whether a *victim's injuries* were life-threatening." *People v Chaney*, 327 Mich App 586, 588; 935 NW2d 66 (2019) (quotation marks and citation omitted). MCL 777.33(1)(c) states that OV 3 should be assigned 25 points when "[l]ife threatening or permanent incapacitating injury occurred to a victim." MCL 777.33 does not define "life-threatening," but Merriam Webster's Online Dictionary defines the term as "capable of causing death [or] potentially fatal."[3]

In contrast, MCL 777.33(1)(d) requires assignment of 10 points to OV 3 when "[b]odily injury requiring medical treatment occurred to a victim." "This Court has defined 'bodily injury' as including 'anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence.' " *People v Johnson*, 342 Mich App 90, 95; 992 NW2d 668 (2022) (citation omitted).

---

[3] Merriam Webster's Online Dictionary, *life-threatening* <https://www.merriam-webster.com/dictionary/life-threatening> (accessed April 29, 2026).

This Court illustrated the difference with an example in *People v Rosa*, 322 Mich App 726, 746; 913 NW2d 392 (2018):

> The issue may be more easily considered in the context of a shooting for which a defendant is charged with assault with intent to murder. If the gunshot resulted in the victim's nearly bleeding to death, the victim suffered a life-threatening injury, and OV 3 should be scored accordingly. Conversely, if the defendant was a poor shot and the victim received only a minor wound that did not place his or her life in danger or permanently incapacitate him or her, OV 3 should not be scored at 25 points.

Johnson's medical records document admission to the emergency department with a penetrating gunshot wound and clinically significant hemorrhagic shock. The records further reflect emergent transfer via advanced life support (ALS) ambulance to a tertiary care facility with required trauma and critical care resources. Notably, while the documentation describes "minimal" external blood loss, it specifies that intensive critical care interventions were necessary to treat or forestall impending, life-threatening cardiovascular collapse and shock. From a clinical perspective, the documentation establishes that Johnson's presentation necessitated immediate access to board-certified trauma surgeons, intensivists, and advanced cardiopulmonary support modalities—including invasive monitoring and the capacity for rapid transfusion protocols. The case records unambiguously evidence a critical, unstable patient status with a high risk of mortality absent specialized intervention.

Further, it requires no specialized medical knowledge to understand that a gunshot wound to the chest, resulting in bullet fragments lodged in the lung and behind the spine, constitutes a life-threatening injury. The scene was marked by significant blood evidence: blood spatter, a trail, and a large puddle in and near the victim's vehicle. An evidence technician documented blood on the door handle and passenger seat of Kershaw's car, highlighting the severity of the bleeding. Johnson collapsed in the street before being transported to the hospital, where he remained for eight days, underscoring the seriousness of his condition. Even after discharge, Johnson continues to have trouble walking and breathing due to the retained bullet fragments, illustrating the lasting impact of his injuries.

A preponderance of the evidence supports the conclusion Johnson's injuries were life-threatening or permanently incapacitating. Consequently, the trial court did not clearly err when it assigned 25 points to OV 3.

## III. CONCLUSION

We affirm defendant's convictions and sentence, but remand solely for the trial court make appropriate factual findings regarding defendant's alleged gang affiliation to determine the need for revision of the PSIR. We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Matthew S. Ackerman

-8-